ROGERS & BALDWIN HARDWARE COMPANY, *Appellant*, v. CLEVELAND BUILDING COMPANY *et al.*

In Banc, February 5, 1896.

1. **Jurisdiction**: MECHANICS' LIEN: APPOINTMENT OF RECEIVER: FEDERAL COURT. Where proceedings in a state court have gone to judgment in a mechanic's lien suit, charging certain specific real estate with a lien, the later appointment of a receiver of the same property by a federal judge does not withdraw the property from the jurisdiction of the state court so as to invalidate a sale on special execution, issued by the state court upon the lien judgment.

2. ———: ———. Process to enforce a judgment, asserting a lien upon specific real property, is an authorized part of the means provided for the exercise of jurisdiction over the property.

3. ———: ———. A grant of power includes all incidents necessary to make the principal grant effective.

4. ———: ———: ———. The appointment of a receiver of certain property by one court does not affect the right of another court, that has already subjected the same property to its jurisdiction, to proceed, until its lawful authority to act upon the property is exhausted.

5. ———: MECHANICS' LIEN: JUSTICE'S JUDGMENT. Where a justice's judgment enforcing a mechanic's lien is filed in the circuit clerk's office, the circuit court has control of the process issued thereon, for purposes relating to its execution.

6. ———: ———: MORTGAGEES: PARTIES. Where mortgagees of property, against which a mechanic's lien is claimed, are duly brought in as defendants in a suit to enforce the lien, they are bound by the judgment of lien thereafter rendered.

7. **Judicial Sale**: INADEQUACY OF PRICE: SETTING SALE ASIDE. While inadequacy of price alone will not justify the setting aside of a judicial sale, yet where such inadequacy is very great and is combined with circumstances tending to show that interested parties such as mortgagees were misled and were prevented from attending the sale, it will be set aside.

8. ———: ———: ———. An execution sale under a mechanic's lien judgment of property, worth from $40,000 to $50,000, for $250, to the attorney of the plaintiff in the mechanic's lien suit set aside at the instance of a mortgagee.

*Appeal from Greene Circuit Court.*—HON. JAMES
T. NEVILLE, Judge.

AFFIRMED.

*Massey & Tatlow* for appellants.

(1) This was a proceeding *quasi in rem*, within
the meaning of the rule, that after such proceeding had
been commenced in the state court no proceedings
could be commenced in the United States court which
would oust its jurisdiction and prevent the state court
from proceeding to judgment and sale of the premises.
*Boswell v. Otis*, 9 How. 336; *Cooper v. Reynolds*, 10
Wall. 308; *Gordon v. Terry*, 15 N. J. Eq. 112; *Heidritter v. Oilcloth Co.*, 112 U. S. 294; *Cole v. Oil Well Supply Co.*, 57 Fed. Rep. 534. (2) It is expressly
decided by the supreme court of the United States, in
a long line of authorities, that substituted process, in
actions *quasi in rem*, can only be sustained when in the
first instance some act is done which gives the court
dominion over the property. That is, by actual possession, or a recorded levy that gives constructive
notice to the world of such dominion. *Pennoyer v.
Neff*, 95 U. S. 714; *Freeman v. Anderson*, 119 U. S.
187; *Cooper v. Reynolds*, 10 Wall. 308; *The Rio Grande*,
23 Wall. 458; *Cole v. Cunningham*, 133 U. S. 116; *Arndt
v. Griggs*, 134 U. S. 557. (3) Undoubtedly, circuit
courts and state courts, in certain controversies between
citizens of different states, are courts of concurrent
and coordinate jurisdiction, and the general rule is, as
between courts of concurrent and coordinate jurisdiction, that the court that first obtains jurisdiction of
the controversy, or of the property in dispute, must be
allowed to dispose of it without interference or interruption from a coordinate court. *Riggs v. Johnson Co.*,
6 Wall. 196; *Central Trust Co. v. Railroad*, 57 Fed.
Rep. 9; *Warrows v. Terry*, 36 Fed. Rep. 337; *Wickam*

*v. Howe*, 60 Fed. Rep. 330; *Mack v. Winslow*, 59 Fed. Rep. 316; *Metz v. Graham*, 57 Mo. 410; *Patterson v. Stephenson*, 77 Mo. 332. (4) Process subsequent to judgment is as essential to jurisdiction, as process antecedent to judgment, or the judicial power would be incomplete and entirely inadequate to the purposes for which it was created. Hence, if a court once acquires jurisdiction *in rem* or *quasi in rem*, it has jurisdiction to proceed, not only to judgment, but to sale under final process, and give the party litigants entitled thereto the proper and appropriate fruits of such litigation. *Riggs v. Johnson Co.*, 6 Wall. 187; *Gates v. Bucki*, 53 Fed. Rep. 961. (5) The supreme court of the state of Missouri has held that in an action to enforce a mechanic's lien, jurisdiction having once attached will not be divested by proceedings in bankruptcy instituted subsequent thereto, and that execution can be sued out in such action so commenced in the state court, and the property sold without first procuring leave from the federal court, and that such a sale will pass a valid title. *Seibel v. Simeon*, 62 Mo. 255; *Fisher v. Lewis*, 69 Mo. 629.

*Beardsley, Gregory & Flannelly* and *White & Mc-Cammon* for respondents.

(1.) The defendants filing this motion pursued the proper remedy. All courts in this state have universally held that a trial court has complete control over its own process and can set aside an execution sale on motion at or before the return term of the writ. *Holzhour v. Meer*, 59 Mo. 434; *American Wine Co. v. Scholer*, 85 Mo. 496; *St. Louis v. Brooke*, 107 Mo. 380; *McKee v. Logan*, 82 Mo. 524; *James & Ray, Ex parte*, 59 Mo. 280. And this is true, even where the purchaser at an execution sale is present and resists the motion. (2) Where gross inadequacy of price is coupled with acci-

dents, mistakes, or misapprehension caused by a purchaser or others interested in a sale, or by the officer's conduct, the court will set aside the sale. *Cole Co. v. Madden*, 91 Mo. 615; *Walters v. Hermann*, 99 Mo. 529; *Railroad v. Brown*, 43 Mo. 294; *Bouldin v. Ewart*, 63 Mo. 330; *Knoop v. Kelsey*, 121 Mo. 648; *Conn v. Day*, 106 Mo. 300; *McKee v. Logan*, 82 Mo. 528. These authorities show that the court was thoroughly justified under the evidence in setting aside sale and deed. (3) In matters of this kind the presumptions are all in favor of the correctness of the finding of the court below, who had the witnesses before him and was better able to determine all the facts. This is especially true in cases like the present, where there was conflict of evidence upon material points, and one of the chief questions to be determined was the good faith of parties before the court. *Waddell v. Williams*, 50 Mo. 216; *Reid v. Griffith*, 63 Mo. 545; *Eidemiller v. Kumpf*, 61 Mo. 344. (4) It having been established by proof that the property was at the time of the levy and sale under the execution in the possession of the federal court through its receiver, the burden devolved upon defendants in the motion to show, even upon their own theory of the case, that the levy and sale were under and by virtue of proceedings in which a court of coordinate jurisdiction with the federal court had first assumed jurisdiction of the property itself. This necessitates the proof of a valid judgment upon which to rest the levy and sale. Since the proceedings were before a justice of the peace in a statutory proceeding to enforce a mechanic's lien, no presumptions will be indulged in favor of his jurisdiction, but the same must be established by proof. It must appear upon the face of his record. *Ewing v. Donnelly*, 20 Mo. App. 6; *Corrigan v. Morris*, 43 Mo. App. 456; *State v. Metzger*, 26 Mo. 65; *McClune v. Beattie*, 46 Mo. 391; *Rohland v. Railroad*, 89

Mo. 180; *Sanderson v. Fleming*, 37 Mo. App. 595; *McKelvey v. Wonderley*, 26 Mo. App. 631; *Hill v. Ore & Steel Co.*, 90 Mo. 103; *Brandenburger v. Easley*, 78 Mo. 659; *Lecoutour v. Peters*, 57 Mo. App. 449; *Bailey v. Cook*, 8 Mo. App. 565. (5) The evidence failed to show the justice of the peace had jurisdiction, because there was no showing of a proper service on the parties to the contract under which work was done. *Wibbing v. Powers*, 25 Mo. 599; *Westcott v. Bridwell*, 40 Mo. 146; *Steinmann v. Strimple*, 29 Mo. App. 482; *Lumber Co. v. Schuler*, 49 Mo. App. 90. (6) The levy upon and sale of the property while in the possession of the federal court made such levy and sale void. *Wiswall v. Sampson*, 14 How. 52; *Ellis v. Co.*, 23 S. W. Rep. (Tex.) 858; *Walling v. Miller*, 108 N. Y. 173; *Harness v. Waterbury*, 27 S. W. Rep. (Tex.) 110; *Robinson v. Railroad*, 66 Pa. St. 160; *Brady v. Johnson*, 26 Atl. Rep. 9; *Walker v. Flink*, 2 McCrary, 341. (7) The jurisdiction of the justice of the peace in the suit brought before him for the enforcement of a mechanic's lien in nowise prevented the federal court from entertaining jurisdiction of a suit for the foreclosure of a mortgage upon the premises and from the appointment of a receiver in that case to take possession of the property. *Wilmer v. Railroad*, 2 Woods, 409; *Moran v. Sturges*, 154 U. S. 256; *Heidritter v. Oil Cloth Co.*, 112 U. S. 294; *Buck v. Colbath*, 3 Wall. 343.

BURGESS, J.—This case was transferred to the court *in banc*, after an opinion reversing the judgment had been rendered. 32 S. W. Rep. 1. We adopt the statement of facts therein made, as well, also, as the first paragraph of the opinion of our learned brother, BARCLAY, J. They are as follows:

"The questions to be determined on this appeal arose upon a motion in the circuit court to set aside a

sheriff's sale, which motion the court sustained. The plaintiffs appealed, after having taken proper steps to give the trial court opportunity to review its ruling, and saving the evidence and all exceptions, in the usual way. The original cause in which the motion appears is entitled: 'W. C. Rogers and A. A. Baldwin, composing the firm of Rogers and Baldwin Hardware Co., plaintiffs, v. The Cleveland Building Co., A. B. Crawford, John D. Porter, Seth Tuttle, Marion Davis, W. H. Keyser, owners, and Jarvis–Conklin Mortgage Trust Co., mortgagees, and Samuel M. Jarvis, trustee, W. W. Baldwin, mortgagee, B. U. Massey, trustee, defendants.' Stated first in the shortest form the case is this:

"Plaintiffs obtained a judgment against the owners of the Baldwin theater or opera house property for a small amount, and a lien against the property under the mechanic's lien law. A special execution issued on that judgment, and the property was sold by the sheriff. Mr. McAfee became the purchaser, as trustee, on behalf of plaintiffs and other holders of liens against the building for work and materials furnished toward its construction. Before the sale, but after the judgment of lien, Judge Philips, at chambers, as judge of the United States circuit court for the western district of Missouri, appointed a receiver of the theater property, in the suit of Lubbock et al., plaintiffs, v. Marion Davis, Ellen Davis, and A. B. Crawford, defendants, to foreclose a mortgage upon the same property. The order of appointment was of wide reach, and is said to be a barrier to the execution of the mechanic's lien judgment, pending the receivership. The plaintiffs in this case are not named as parties to the proceeding in the federal court. After the sale under the execution on the mechanic's lien judgment, the Jarvis–Conklin Mortgage Trust Company and Samuel M. Jarvis filed

in the state court the motion which is the basis of this appeal. The principal grounds of the motion are that the sale was an interference with the receivership of the property established by the federal court, and was hence void. There are other reasons assigned in the motion which will be mentioned further on.

"Passing now to some of the necessary particulars of the case, it will be convenient to keep the following dates in view:

"September 9, 1891, date of mortgage sought to be foreclosed in the Lubbock case in the federal court.

"December 5, 1891, beginning of plaintiffs' lien account.

"March 5, 1892, close of lien account.

"May 1, 1892, notice of lien.

"May 31, 1892, lien filed in circuit clerk's office.

"August 17, 1892, plaintiffs mechanics lien suit begun.

"September 20, 1892, judgment in mechanics lien suit for $37.36, and of lien.

"March 13, 1893, transcript of the judgment filed in circuit clerk's office.

"March 16, 1894, petition for receiver in federal court.

"March 17, 1894, receiver appointed by Judge Philips.

"March 19, 1894, receiver took possession of the property.

"October, 1894, special execution issued from circuit court on mechanics lien judgment, returnable to January term, 1895.

"November 23, 1894, sale on special execution. Property bought by Mr. McAfee.

"December 15, 1894, sheriff's deed recorded.

"January 14, 1895, motion filed to set aside sale.

"January 23, 1895, motion sustained; sale set aside.

"Although the mortgage first above mentioned ostensibly antedates the opening of the lien account, it seems that the bonds (for $49,000) secured by it were placed later. When that mortgage was recorded does not appear. The investigation of the facts in regard to that instrument was cut short at the hearing by an admission by one of the attorneys for the motion, who conceded that the 'lien part' of the judgment (under which the sale took place) was a prior lien.

"The proceeding to enforce plaintiffs' mechanics lien was begun before a local justice of the peace, after the filing of the lien in the circuit clerk's office, according to law. R. S. 1889, sec. 6161. The defendants in that original cause were the parties named as such at the outset of this opinion. The moving parties in the present motion are the trust company and the trustee, Mr. Jarvis, both defendants in that case. Five of the defendants were personally served; the others (including the trust company and Mr. Jarvis) were ultimately brought in by posting advertisements, as prescribed in such cases. R. S. 1889, sec. 6163.

"The justice's judgment refers to the mortgage or deed of trust in which Mr. Jarvis was trustee for the Jarvis–Conklin Mortgage Trust Company, and finds plaintiffs' demand (for the amount of judgment rendered against the owners) to be paramount to the mortgage, and adjudges that it is a lien on the property described, including the estate and interest of these defendants. A transcript of that judgment was duly filed in the circuit clerk's office, and the execution sale now in question took place upon process issued from the circuit court upon that judgment. No appeal from the latter was ever taken, and the judgment became final in due time.

"The order made by Judge Philips in the foreclosure suit is quite long, and need not be fully recited now. Its substance is that, upon a hearing before the judge at chambers, Mr. Jewell was appointed receiver for the United States circuit court for the western district of Missouri, and directed to take immediate possession of the property (which was described), and to 'carry on the business connected with said opera house,' * * * and 'carry out contracts already made by the respondent A. B. Crawford in connection with said opera house business and the procurement of amusement enterprises therefor, to make new contracts in that respect,' etc. The usual directions in regard to funds and accounts were included. The receiver was authorized, among other things, to pay 'any sums necessary for the payment of taxes, or which from time to time may be required to save from sale or sacrifice the said real property.' The order further declared 'that the respondent A. B. Crawford, his agents, employes, and all other persons, whether claiming through or under him, or otherwise, are hereby enjoined and restrained from attaching, seizing, levying upon, or otherwise taking or interfering with any of the property above described, or with the said receiver in his possession, control, and management of the said property.'

"Other facts will be stated in the course of the opinion, in connection with some subordinate points on which they bear.

"1. The chief issue concerns the relation of the original lien case to the receivership in the federal court. It will be seen that, by the terms of the order appointing the receiver, 'all persons,' whether claiming through the defendant Crawford 'or otherwise,' were enjoined from 'attaching, seizing, levying upon, or otherwise taking or interfering with any of the prop-

erty,' etc.   This language might reach the proceedings
under the lien execution in the state court, against this
property.   But if the property, at the time that order
was made, had been already subjected to the judicial
control of the state courts, which had not yet concluded
their action upon the property, then the federal order
might be disregarded by 'all persons' (not parties to
the foreclosure suit, at least) who were entitled to
demand the exercise of the state court's jurisdiction
upon said property.

"The question is whether or not the mechanics
lien proceedings subjected the theater property to the
judicial power of the state courts until that jurisdiction
was exhausted, so that no other court might meanwhile
remove the property from the control necessary to
make the use of that jurisdiction effective. The comity
which should govern the actions of courts of concur-
rent jurisdiction in such circumstances has passed into
a rule of law, now generally recognized in the United
States, and which has been thus stated by the highest
federal tribunal:

" 'When the object of the action requires the con-
trol and dominion of the property involved in the
litigation, that court which first acquires possession, or
that dominion which is equivalent, draws to itself the
exclusive right to dispose of it, for the purposes of its
jurisdiction.'   *Heidritter v. Oilcloth Co.* (1884) 112 U.
S. 305, 5 Sup. Ct. Rep. 135.

"The proper application of this rule to the facts
in judgment depends somewhat on the nature of the
mechanics lien suit.   Such suits in this state are regu-
lated by positive law, which clearly indicates their
nature.   An action to enforce such a lien deals with
certain described property, against which the lien is
claimed, and, upon establishment of the claim, judg-
ment goes first against the principal debtor on the

account. The amount ascertained to be due is then adjudged a lien on the specific property, and a special execution thereafter issues, directing a sale of the identical property to satisfy the demand. Whether such an action (so far as it concerns the realty) should be regarded as *in rem*, or be placed in the class which some jurists have described as '*quasi in rem*,' we do not stop to inquire. The true inquiry is whether the action deals with the property it seeks to affect in such a specific and definite manner as necessarily to withdraw the property from the exclusive control of other courts while the action is pending. We think it does, and that such is the plain effect of the Missouri statutes governing that action. R. S. 1889, secs. 6159–6167, 6705–6729.

"The jurisdiction of the state courts (having attached to the property a long time before the suit in the federal court began) was not exhausted by the rendition of the judgment of lien. The ultimate process (in this instance, of special execution) needed to make the judgment fruitful is, under our law, an essential part of the means provided for the exercise of power comprehended in the term 'jurisdiction.' A grant of power is considered to include the use of all incidental powers necessary to make the principal grant effective. Broom, Leg. Max. [8 Am. Ed.], *pp. 479, 486; *State v. Ryno* (1887) 49 N. J. Law, 603, 10 Atl. 189. In a leading federal case it was said that, 'process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred.' *Riggs v. Johnson Co.* (1867) 6 Wall. 187.

"The subject of the mechanic's lien suit (namely, the opera house property) was thus plainly within the

control of the state courts, and neither the appointment of the receiver nor the order then made withdrew the property from that control. The establishment of the receivership did not transfer the title to the property, nor did it divest liens already fixed upon it. To hold that such was the effect of a proceeding to which the lien claimants were not parties would be to deprive them of their rights in the property, without a hearing, which we certainly decline to do. As the learned federal judge had no authority or jurisdiction to take the property out of the judicial control of the state courts in the manner attempted in said order, it follows (if his order is to be construed as having that effect) that it is void and of no force, as to the rights of the lien claimants in process of assertion in the state court.

"In *Gates v. Bucki* (1893) 12 U. S. App. 69, 4 C. C. A. 116, 53 Fed. 961, the federal court of appeals of this circuit, by Judge SHIRAS, declared that, 'this property, being thus in the custody of the state court in proceedings intended to affect the title and control the disposition of the same, the property was for the time being withdrawn from the jurisdiction of the federal court, and when the foreclosure suit was filed in that court it could not and did not bind or reach the property, because the same was not then within the plane of federal jurisdiction.'

"The above ruling was made in a case wherein the jurisdiction of the federal court was challenged by appropriate moves in that court. But if the principle announced in it is sound, as we believe it to be, it is not essential for the lien claimants to go into the federal court to secure recognition of that principle. It is one of those rules of 'general jurisprudence' binding alike on federal and state tribunals. It follows that the ruling of the trial court on the motion to set aside

the sale, in so far as it is referable to the pendency of the receivership proceedings, was erroneous.''

2.    The next question is as to the correctness of the ruling of the court in setting aside the sheriff's sale.

That the court had control of its own process, and the power to set aside the sale, if there was gross inadequacy of price, and the interest of the movers was injuriously affected by the sale, if they were by mistake or misapprehension prevented from attending it or preventing it, we think is well settled law.    It is equally well settled that inadequacy of price alone will not justify the setting aside of a judicial sale, and the court so declared; but when the inadequacy of price is very great, as in the case at bar, slight circumstances tending to show that interested parties, such as mortgagees, were misled, or by accident or mistake prevented from attending the sale, or preventing it, will justify its being set aside.    While the court declared as a matter of law ''that inadequacy of consideration, however gross, is not sufficient ground of itself to set aside the sale,'' it did set it aside, and it may reasonably be inferred therefrom that in its opinion there were other facts in evidence which justified it in so doing.

The execution under which the sale was made was a transcript execution issued by the clerk of the circuit court of Greene county on the transcript of a judgment rendered before a justice of the peace of said county enforcing a mechanic's lien against the property in question in favor of Rogers and Baldwin Hardware Company v. The Cleveland Building Company, A. B. Crawford, J. D. Porter, Seth Tuttle, Marion Davis, and W. H. Keyser, owners.    The Jarvis Mortgage Trust Company, mortgagees, Samuel M. Jarvis, trustee, W. W. Baldwin, mortgagee, B. U. Massey, trustee, were also made parties to that suit, but no judgment was

rendered against them.   The execution could not be found, but must be presumed to have been in accordance with the judgment.

The judgment after describing the tract of land by metes and bounds proceeds as follows, "together with the four story brick building known and designated as the Baldwin opera house, situated thereon, and that said land and building be charged with the payment of said debt."   In the notice of sale by the sheriff no mention was made of the opera house, other than as the "buildings and improvements" on the land, although the property was generally known as the "Opera House" block.

The sheriff testified that at the time of the sale he did not know that he was selling the opera house property.

The property had been previously advertised for sale by the sheriff under nine executions issued on transcripts of mechanics' lien judgments in favor of different parties, amounting in the aggregate to about $5,000.   The judgment creditors in those cases, as well as in this, were represented by Capt. McAfee as their attorney, the purchaser of the property at the sale in question.   Those judgments were all compromised or paid off by T. J. Flannelly, who represented the Jarvis–Conklin Trust Company.

J. T. White, one of the attorneys for said company, testified that about the time the judgments were paid, Flannelly asked Capt. McAfee if he wouldn't assign those which he had paid off to him, or to his clients, and Capt. McAfee said he couldn't for the reason that he had other suits pending, but that if he would pay off the claims he had pending that, "I will sell them to you, but it wouldn't be fair to assign to you all those I have in judgment and leave out those that are still pending."   Witness further stated that

his recollection was that Mr. Flannelly asked the captain if that was all the judgments that he had, and he answered that it was.   This conversation, or the chief part of it, Capt. McAfee testified did not occur.  White also stated that Mr. McCammon and himself were the attorneys for the mortgage trust company in Springfield and represented it in all the litigation about this property, and the sheriff did not notify them that he had any execution in this matter at all; and that it was his custom to do so in such cases; that the service was had by publication, and the judgment obtained without their knowledge.

The property was worth from $40,000 to $50,000, and was sold by the sheriff for $250.   The purchaser represented a number of lien claimants whose demands not then in judgment amounted to about $11,000, and by an arrangement between himself and them, they were to share the property in proportion to the amount of their respective claims.

While the notice of sale was a technical compliance with the law, it should have given a more particular description of the property, and in failing to do so was to some extent misleading.   So much so, in fact, that the sheriff did not know what property he was selling.

Herman, in his work on Executions, page 415, in speaking of sheriff's sales for inadequate price, says: "A sale of twelve thousand dollars' worth of property for four hundred dollars, is strong ground for relief, especially where the advertisement contains an imperfect description of the property.  The fact that the advertisement was so framed as to mislead, so that no one, not acquainted with the premises, could have conjectured from the advertisement what the property was, that was intended to be sold, in connection with the fact that there were no bidders at the sale but the purchaser, and the property was sold at a very inadequate

price, makes a sale constructively fraudulent against a defendant and others having liens on the property, and constitutes a ground for equitable relief, although the advertisement may have been a technical compliance with the statute, so as to vest a valid title in the purchaser." *Hodgson v. Farrell*, 15 N. J. Eq. 88.

The imperfect description of the property in the notice of sale should be taken into consideration in connection with other facts in evidence in passing upon the validity of the sale.

The weight of the evidence clearly showed that Flannelly as the agent and attorney of the mortgage company was misled by the supposed statement of Capt. McAfee with respect to the payment by that company of all lien judgments which he represented against the property, for it is fair to presume that he would not have paid all others, and left remaining unpaid the judgment under which the property was sold, amounting to so small a sum as $37.60. His object seems to have been to pay all liens then in judgment, and it is unaccountable why he did not pay that, unless he was misled by what he understood the statements of Capt. McAfee to be with respect thereto. We do not undertake to say that Capt. McAfee was guilty of any intentional wrongdoing, fraud, or unfairness in buying the property, and only speak of matters connected with the sale from a legal standpoint. These facts taken in connection with the evidence of White that the custom of the sheriff was to notify him with respect to intended sales of this property, and his failure to do so on this occasion, the inadequate price that the property sold for, fully justified the court in setting the sale aside. *Seaman v. Riggins*, 1 Green's Chy. 214. The purchaser was attorney for plaintiff and was not an innocent purchaser. *Harness v. Cravens*, 126 Mo. 233.

Moreover, the sheriff in selling the property was the agent of both plaintiff and defendant, owing a like duty to each, and bound to protect the interest of all · parties concerned. It was his duty to see that the property was not sacrificed, and to that end could have returned the execution "no sale for want of bidders." *Conway v. Nolte*, 11 Mo. 74; *Shaw v. Potter*, 50 Mo. 281; *Holdsworth v. Shannon*, 113 Mo. 508; *Cole County v. Madden*, 91 Mo. 585; *State ex rel. v. Moore*, 72 Mo. 285. His failure to do so can only be accounted for on the grounds of his want of knowledge of the property that he was selling, and of its value. His course can not be justified or excused on the ground that the owner of the fee in the property is not here complaining; the mortgagee is. That, however, does not legalize the sale, which in its result is the transfer of defendant's property to the purchaser, for about one eighteenth of its value; a merely nominal sum.

All the plaintiff company is entitled to is its debts, and that end is not defeated by opening a bid, but will certainly be attained if that be done. The plaintiff suffers no loss if the sale be set aside, while the mortgage company loses a large amount of money. The object of the sale is not to transfer the property of the execution debtor to the execution creditor "but to pay the debt; he can not, therefore, be injured by any proceeding which has that for its object, and does not cause any unnecessary delays or expense." *Littell v. Zuntz*, 2 Ala. 256. Justice can be but subserved by a resale of the property, for it can not result in any injury to the purchaser, the purchase money being refunded.

The sale if invalid as against the movers could not in any way be legalized by reason of any private arrangement between the purchaser and his clients as to how the property was to be shared by him with them, to which the company was not a party. The judgment

is affirmed. BRACE, C. J., SHERWOOD, MACFARLANE, and ROBINSON, JJ., concur. GANTT, J., concurs in second and last paragraphs but expresses no opinion as to the first. BARCLAY, J., dissents from last, but concurs in first, paragraph.

BARCLAY, J. (*dissenting*).—Upon the leading proposition in the case a majority of the court *in banc* have adopted the unanimous opinion delivered in the first division. But they discard some of the minor rulings announced in that opinion, and conclude to affirm the circuit judgment. This change in the result does not seem to me entirely satisfactory.

1. My view still is that the cause should go back for a rehearing. The reasons for that view were given in the divisional opinion, and others will be added.

The opinion of the first division was as follows (omitting the passage approved in the learned opinion of Judge BURGESS):

"2. The defendants next insist that, as the trial court had control over its process, it might set aside the execution sale on equitable grounds satisfactory to that court.

"It is true, as pointed out in *Ray v. Stobbs* (1859) 28 Mo. 35 and recently repeated in *Bryant v. Russell* (1895) 127 Mo. 422 (30 S. W. Rep. 107), that a court on motion has jurisdiction to regulate and control the use of its own writs, so as to see that no injustice is done by them.

"But the exercise of its judgment upon such motions is not beyond all review.

"The reasons assigned in such motions must be considered in determining the conclusiveness of action thereon by the trial court.

"The lien judgment in the case at bar was rendered by a justice of the peace. But when the transcript

thereof was filed in the circuit court, it came under the control of the latter court for purposes relating to its execution.    R. S. 1889, sec. 6287.

"That control includes the power, on proper occasion, to set aside sales on execution to satisfy such judgments.

"The grounds of the motion in the pending cause were four.    Two of them related to the proceedings in the federal court.    The comments already made dispose of them, so far as we are concerned.

"The first of the two remaining grounds was that the sale was for an inadequate sum; that the defendants, bringing the motion, had no actual notice or knowledge of the judgment, execution, levy, or sale, until long after the sale; and that the sheriff had a custom (which he failed in this instance to observe) to notify interested parties or their attorneys of the demand of such an execution, and to thus give opportunity to pay the same.

"The circuit judge, upon an instruction, given at the close of the evidence on the motion, declared that mere inadequacy of consideration in the sale was not sufficient ground to set it aside.    So it is probable that his order sustaining the motion was not based on that objection.

"The circuit judge also excluded questions of defendants directed to the point as to the sheriff's custom to notify defendants in execution.

"As defendants are not in position to complain of that ruling, we need not go into it on plaintiffs' appeal.

"Want of actual knowledge by, or notice to, defendants of the proceedings to enforce the lien would not alone form a just or substantial ground to vacate the process on a judgment for its enforcement, where the proceedings were valid against collateral attack,

those defendants having been duly brought before the court by constructive service as allowed by law.

"3.   The remaining ground of the motion is that the 'sale was inequitable, unjust, and contrary to good conscience,' for the reason that defendants, long after the judgment was rendered, and 'before the issuance of said execution, were led to believe and did believe by statements made by said C. B. McAfee to the attorneys of said defendants, that there were no other lien judgments at said time against said property on behalf of any clients of his, and that the sum of five thousand dollars, which was then paid to said C. B. McAfee, on settlement of a large number of lien judgments held by his clients, then and there settled all his lien claims and those of his clients, which at said time were reduced to judgment; that these defendants and their said attorneys were thrown off their guard by said statements of said C. B. McAfee, and by reason of the same, did not investigate as to whether there were any such other judgments, and did not watch for said sale, and said property was sold without their knowledge for the grossly inadequate sum of two hundred and fifty dollars.'

"We have examined the evidence carefully on this point, and find that it does not establish the facts above alleged.   We are unable to discover any proof of any statements by Mr. McAfee which should reasonably have been interpreted by adverse counsel as charged in the passage from their motion above quoted.

"4.   Some minor objections to the execution sale are made, as, for instance, that there were certain supposed irregularities in the lien judgment, or proceedings.   But on examination we find none of those objections tenable or requiring special comment.

"5.   On the case as it was submitted to the learned trial judge, we hold that he was in error in set-

ting aside the sale. For that reason we shall reverse his order. As he sustained the motion, the moving defendants had no occasion to except to the rulings (against them and favorable to plaintiffs) excluding proof of a custom of the sheriff to notify parties interested, before enforcing executions, and declaring by instruction that mere inadequacy of price was not a sufficient ground to set aside the sale.

"In view of these rulings, to which these defendants had no need to except (because of the final ruling in their favor), we are unwilling to substitute a conclusive ruling to the contrary, on the record as it now stands.

"While the court's declaration (as to inadequacy of price) is correct as a general proposition when applied to sheriff's sales which have become final, it is not more than a half-truth as applied to the review of such a sale upon motion made before the sale has become a finality under the process on which it took place.

"It has been expressly held in this state that it may sometimes be the duty of an officer, in charge of process, to postpone such a sale, on his own motion, in case a gross and unnecessary sacrifice of property is threatened. *Conway v. Nolte* (1847) 11 Mo. 74; *State ex rel. v. Moore* (1880) 72 Mo. 285.

"And in cases where the officer would be warranted in postponing the sale, the court itself, if the sale occurred, might set it aside upon prompt and timely application to that end, if the property has been in fact sacrificed by a grossly inadequate sale, in circumstances which call for such relief against the abuse of the court's process.

"In the present case the property sold for $250. It was certainly not worth more than forty or fifty thousand dollars. It was admitted that it cost about

the latter sum; and there is proof that it was worth at least $15,000. It bore an incumbrance to secure $49,000.

"There are special facts, however, which indicate that the purchaser at the execution sale represented a large body of lien claimants whose demands reached the amount of about $11,000 and the sale (under section 6727, R. S., 1889, as well as by their own mutual agreement) would inure to the benefit of all of them in proportion to their demands. So that, in effect, in view of the insolvency of the Building Company, the principal debtor, the price may be considered as substantially equivalent to the last named sum, which we do not think sufficiently out of proportion to the value of the property to warrant a court in vacating the sale, on the sole ground of inadequacy in the price.

"But here the evidence which the court excluded, as to the custom of the sheriff to notify defendants in execution, might have laid a basis for the court's remedial discretionary action, when coupled with great inadequacy in the proposed price.

"Where inadequacy of price (such as would not alone warrant interference with such a sale) is accompanied with any circumstance of surprise, mistake, or even excusable neglect, the court, whose process is involved, may, in the exercise of a sound discretion, relieve against a sacrifice of the property, where such course appears to be dictated by the demands of justice in the particular case. *Cole Co. v. Madden* (1887) 91 Mo. 585. This may be done on timely motion, without resort to an independent suit in equity.

"We hence reverse the decision upon the motion to set aside the judgment, and remand the cause with directions to rehear that motion in conformity to the principles announced in this opinion. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur."

6.   To the reasons given in the above quoted part of the divisional opinion, it may be well to add a few further observations, in view of some positions taken in the opinion of my learned associate, Judge Burgess.   His opinion holds that the setting aside of the execution sale was a proper use of the discretionary power of the circuit judge.

It is plain from the record in this court that the circuit judge did not intend to exercise his discretion upon the facts, because he was convinced (as his rulings show) that the pendency of the receivership prevented a valid sale.   All the court here differ with him on that point, yet a majority favor affirming the order to set aside the execution sale, nevertheless.

The proposition is undoubtedly true that a circuit ruling should always be sustained where it is right, though wrong reasons may have prompted it.   But where a reviewing authority undertakes to say that a decision in the trial court is correct on discretionary grounds, when that decision was evidently based on other, and untenable, grounds, the reviewing court should at least be very sure that ample foundation for a favorable exercise of the discretionary power (which was never exerted) exists in the facts, and it should also be very sure that the conclusion announced accords with the demands of the situation which confronted the trial judge in the particular case.

The application of discretionary authority, to set aside execution sales, by the court out of which the process has issued is governed by equitable considerations, though the form of relief may be legal.   On motions directed to that end the court (though the form of action is not changed) applies rules of common fairness and justice according to the very right of the case, and on such terms as may be just.

Here, the parties moving to set aside the sale are

not the primary debtors. They are persons claiming rights in the property under a mortgage; and they profess to have been surprised at the sale and to have been willing to pay the claim without a sale. These facts are emphasized in the learned opinion of the court in banc.

It appears that the moving defendants concede that the plaintiffs' mechanics' lien judgment "is a prior lien" (to use the language of their admission in the record), and that the lien judgment has become final as to all concerned. The gravamen of defendants' complaint now is that they were misled by Mr. McAfee when they were trying to pay off all claims reduced to judgments.

Should any court, on such a showing, set aside an execution sale, in the exercise of discretion, without putting some sort of terms upon the parties moving for such relief? Ought not the latter, in such circumstances, to be required to do that equity which their admissions concede? Ought they not to pay, tender, or, at least, secure, the plaintiffs' judgment which the moving parties have no ground to contest (and do not contest), before an order for resale is made?

The trial judge merely set aside the sale, without more. Even the costs of the first sale were not required to be paid by the moving parties. Plaintiffs are thus put to the hazard of paying costs of the resale, and of the possibility of losing their present full security for payment. At all events plaintiffs must lose considerable time now in obtaining payment of their demand, though the latter is practically undisputed.

It seems to me that a court, proceeding to deal with the situation described by this record, should at least require security for plaintiffs' judgment before setting aside the former sale in the circumstances here

shown, especially where the chief ground of the objection to the former sale is that these parties were trying beforehand to pay the plaintiffs' demand.

But no terms were imposed of any sort, for the manifest reason that the learned trial judge thought the sale should be vacated as an interference with the federal receivership.    Had he reached, or considered, the general equities of the motion, he would, no doubt, have fully recognized the soundness of these suggestions as to the propriety of imposing reasonable terms on the moving defendants as a condition to setting aside the sale.    The imposition of fair terms in such circumstances is approved as well by precedents as by the obvious demands of justice.    *Sawin v. Bank* (1853) 2 R. I. 382;  *Winterson v. Hitchings* (1895) 34 N. Y. Sup. 183.

At the hearing of this motion, Mr. McAfee, who purchased the land on behalf of the lien claimants, was a witness.    In the course of his examination he said: "If these gentlemen will pay my clients to-day, I will deed them this property.   *   *   *   I had the sale made because I wanted to bring these men up to the mark in some way.   *   *   *   If these gentlemen will just pay off these claims, they will own the opera house."

But these gentlemen were then contesting his purchase chiefly on the legal ground that the receivership was an obstacle to its consummation; and so they gave no heed to this polite invitation to pay off the mechanics liens.

7.    The pendency of the receivership and the well known power of the federal authority account in a great measure for the small price the property brought.    But those factors in that result were not chargeable to the mechanics and material men, or their attorneys, who seem only to have sought payment for the labor and improvements upon the property.

Whoever bought in such circumstances bought a certain lawsuit, with its probable terminus in the supreme court of the United States. What wonder then that no one bid at the sale but the lien claimants, or their attorney to protect their interest!!

The condition of the property and of its title had quite as much to do with the small price realized as any of the facts that have been mentioned as warranting interference of the court on discretionary grounds.

8. It has been intimated that the advertisement was misleading because the sheriff says he did not know he was selling the opera house. The description as used by him in his published notice of sale closely resembled the one adopted in the learned district judge's order appointing the receiver. No one acquainted with the property could have been misled. The federal receiver was manager of the advertising department of the paper in which appeared the advertisement of sale. It is not likely in such circumstances that any fraud or secret sale was contemplated or perpetrated by the parties seeking to have the sale brought on, or by the sheriff.

9. The court, on a direct ruling, excluded evidence of the sheriff's custom to notify parties defendant in executions of his demand, before proceeding to a sale. Later on, one of the witnesses testified to such a custom. That fact was volunteered by the witness as part of an answer to this question:

" Have you looked in the office of the attorneys for the judgment creditors, since that, for it" (namely, the lost execution)?

Though the evidence of the custom thus came in, and was not stricken out, it is clear from the court's definite ruling on the point, at an earlier stage of the hearing, that the learned judge regarded the fact as irrelevant, and gave no weight to it.

It does not seem necessary to discuss its value to support a conclusive judgment in this court on a question properly referable to the discretion of the trial judge.

10.   All things considered, it seems to me that the order setting aside the sale, without any sort of terms imposed on the moving parties, should not be affirmed; but that the cause should be remanded to the end that the motion may be reheard on its merits on the circuit, and such conclusion be then reached as the facts disclosed may appear to warrant, in view of the ruling of the supreme court that the federal receivership is of itself no impediment to the sale.