# MARY MITCHELL, Appellant, v. CHARLES B. GREELY et al., Respondents.

**St. Louis Court of Appeals.    Argued and Submitted April 8, 1913. Opinion Filed May 6, 1913.**

1. **APPELLATE PRACTICE: Attachment: Orders Before Final Judgment: Appealability.** An order revoking an order of sale of attached goods and setting aside a sale thereunder is not appealable, prior to final judgment; but such an order may be reviewed, on an appeal by plaintiff after final judgment, even though such judgment be in his favor.

2. **TRIAL PRACTICE: Attachment: Setting Aside Order of Sale: Jurisdiction.** A motion to revoke an order of sale of attached goods and to set aside a sale thereunder, filed at the term during which the order was made and continued to the next term, may be acted upon at the next term.

3. **ATTACHMENT: Setting Aside Order of Sale.** The trial court has authority to revoke an order of sale of attached goods and to set aside a sale thereunder, especially where the plaintiff is the purchaser and the rights of third persons have not intervened.

4. **———: ———: Evidence: Suppression of Evidence.** Where the plaintiff in an attachment suit prevented an inspection of the property attached, he was in no position to urge, on appeal, that, because there was no definite evidence of the value of such property, the court was not authorized to revoke the order of sale of such property and set aside the sale thereunder on the ground that the property was sacrificed.

5. **———: ———: Sufficiency of Evidence.** Evidence adduced in support of a motion to revoke an order of sale of attached goods and to set aside the sale thereunder, relating to the conduct of the sale by the sheriff and the failure to give sufficient notice thereof, *held* to show such an abuse of the process of the court as to warrant the sustaining of the motion.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*Thomas Bond* for appellant.

(1) An appeal may be taken from any final order, either at the time or after final judgment has been entered. R. S. 1909, sec. 2038; Padgett v. Smith, 206 Mo. 331. (2) The order setting aside the sale was a final judgment as to the matter decided, and appellant was aggrieved thereby. R. S. 1909, sec. 2038; State ex rel. v. Bland, 197 Mo. 197, 215. (3) This was an execution or sheriff's sale, and not a judicial sale; and, being executed, the court had no power to set it aside. R. S. 1909, sec. 2320; 17 Am. & Eng. Ency. of Law (2 Ed.), p. 956; Noland v. Barrett, 122 Mo. 189, 190; Young v. Kellar, 94 Mo. 592; Plow Works v. Iron Works, 56 Mo. App. 1; Tomey v. Baxter, 59 Mo. App. 470; State v. King, 45 La Ann. 1421. (4) Even if the trial court had power to set aside this sale, which we deny, yet, under the evidence, such power ought not to have been exercised. R. S. 1909, sec. 2208; Testimony of Thomas B. Kilcullen; Testimony of George W. Kerr.

*Johnson, Rutledge & Lashly* for respondents.

(1) This court has no jurisdiction of this appeal. (a) An appeal cannot be taken from an order setting aside for irregularity a sheriff's sale of attached perishable property, which is made at a term prior to the trial on the merits and final judgment. Crossland v. Admire, 118 Mo. 87; Sec. 2038, R. S. 1909. (b) An interlocutory order made prior to final judgment with reference to a matter in no way affecting the merits of the case and having no reference to the issues in the pleadings cannot be appealed from. (c) The judgment was in favor of appellant for the full amount. It is not as judgment plaintiff she appeals, but as purchaser at the sheriff's sale; for such purchaser acquires only an incipient right which may develop into a perfect right if it is not set aside by the court. Thomas

v. Elliott, 215 Mo. 598. (2) The court had full power to set aside the sale. (a) As sales of perishable property seized by the sheriff can, under the statute, be made only on an order of the court, and as a return of the proceedings of the sale must be made by the sheriff, it is clear that the court which made the order and to which the report of the sale must be made has complete power over its process and has power to set aside or recall such sale, as well as its order of sale. Sec. 2320, R. S. 1909; Oeters v. Aehle, 31 Mo. 380; Young v. Keller, 94 Mo. 598; Aurora v. Lindsay, 146 Mo. 509; Frank v. Eby, 50 Mo. App. 579; Grover v. Smith, 49 Mo. 318. (b) Such a sale is for the mere purpose of conserving the attached property and to change its perishable form into cash, to abide the result of the controversy. In this respect it differs from an execution sale where the writ is subject to the control of the plaintiff. Here the court is acting by its inherent and statutory power in the interest of all concerned, and the proceeding is in the nature of one *in rem.* City v. Brooks, 107 Mo. 380; Aurora v. Lindsay, 146 Mo. 509; McKee v. Logan, 82 Mo. 524; Wine Co. v. Schuler, 13 Mo. App. 345; 85 Mo. 496. (c) An interlocutory order or decree made in the progress of a case is always under the control of the court before final judgment and may be set aside on motion. Collier v. Lead Co., 208 Mo. 246, at 275; Black on Judgments, sec. 308; 15 Cyc. 349; Wine Co. v. Schuler, 85 Mo. 496. (3) The sale was unfair to respondents and worked a great injustice upon them because of the situation of the property and the character of the notice. (a) The sale was made on an *ex parte* application and without notice to respondents of the application or sale was sold at a sacrifice. (b) In sales by the sheriff, such a description must be given of the property as will notify the bidders with certainty of the property to be sold. State ex rel. v. Keeler, 49 Mo. 546, at 551; Davis v. McCann, 143 Mo. 172, at 178.

(c) Where property which is susceptible of being sold in division is sold in bulk, the court, on timely motion, will set aside the sale, particularly where the price was inadequate. Hicks v. Perry, 7 Mo. 346; Rector v. Hart, 8 Mo. 448; Kelly v. Hunt, 61 Mo. 463; Gordon v. O'Neil, 96 Mo. 350; State ex rel. v. Yancey, 61 Mo. 397; Wine Co. v. Schuler, 85 Mo. 496.

REYNOLDS, P. J.—This action was brought to recover $1794.13, alleged to be due plaintiff by the defendants, the amount being a balance claimed to be due on a note which was secured by certain real estate, to satisfy which debt the real estate was sold under the provisions of the deed of trust and the property bought in by plaintiff, leaving a balance due on the note and for costs and expenses of the sale in the above mentioned amount. An attachment was sued out in aid of the action, defendants being nonresidents. Under the writ of attachment the household goods, still situated in the premises which had been covered by the deed of trust, and which was bought in by plaintiff, were attached and levied upon, these household goods having been left in the house and in charge of plaintiff by the sheriff after he had seized them under the writ of attachment. The sheriff in his return to the writ of attachment described the goods which he had seized and taken into custody with great particularity, describing the various articles which were in the several rooms, this description covering about three pages of the printed abstract. The attachment was levied on the 27th of July, 1911, the cause returnable to the October term of the court.

On the 12th of September, 1911, and during the June, 1911, term of the court, the sheriff, without giving notice to defendants or their attorneys, went before a judge of another division of the court, the division to which the cause was assigned not then being in session, and presented to that judge an application

for a sale of the property attached, on the ground
stated that the goods were perishable and that it would
be only at great cost that they could be stored or
guarded. The order of sale was granted, the sale to
be held on the 23d of September. On September 11th,
and acting under this order, the sheriff caused to be
printed a number of handbills which, after setting out
the order of sale, described the property in this way:

"A miscellaneous lot of household goods, furni-
ture, bric-a-brac, chandeliers, mirrors, statuary, car-
pets, bookcases, dressers, washstands, pictures, rugs,
oilcloth, chiffoniers, folding beds, screens, curtains,
curtain poles, tables, easels, chairs, jardinieres, lamps,
wastebaskets, footstools, clocks, garden benches, china
closets, glassware, chinaware, bedding, pillows, mat-
tresses, etc., and one pipe organ."

The sheriff's deputy testified that he had distrib-
uted a number of these handbills and had set up three
of them in and about the courthouse of the city, none,
however, as appears, being posted at the house in
which the property was contained nor in its immediate
vicinage. On the day of and during the sale, and ap-
parently for some time prior thereto, the house in
which the goods were situated was closed, the main en-
trance boarded up, and an unknown man, and the dep-
uty sheriff, an agent for the plaintiff, and an attorney
for the plaintiff, on the day of the sale, that is the 23rd
of September, without opening the front or main door,
entered by a back door and the sheriff cried off the
sale in the house, there being present other than plain-
tiff's attorney, only an agent of plaintiff and the dep-
uty sheriff, as well as this unknown and unidentified
person, a person, so far as the evidence shows, un-
known to the sheriff's deputy or to the attorney or to
the agent of plaintiff. This unknown person bid the
property up to $1300, and plaintiff bidding $1350, the
property was knocked down to her at that price as the
highest and last bidder. She gave a check to the sheriff

for the amount of the bid and the parties appear to have left the premises, the sheriff, testifying that he had turned the property still in the house, its situation and condition unchanged, over to the agent of plaintiff then and there present. The defendants had no notice of the intended sale and were not represented at it.

The attorneys for the defendants heard of the sale the evening of that day, Saturday, and after the sale, and at once notified the sheriff that that they would appear in court on the Monday following and move the court to vacate the order and set aside the sale. On that Monday and during the same June term of the court, the attorneys for defendants, as well as for plaintiff, appeared in court and the former presented their motion to set aside the sale and to quash and recall the order theretofore entered in the cause authorizing and directing the sheriff to sell the property. This motion sets out that none of the property was perishable nor likely to greatly depreciate in value; that the goods were shut up and inclosed in the premises, which had been locked and kept closed by the sheriff and not accessible to the public or prospective purchasers; that no opportunity for inspection was given to the public or possible purchasers; that no newspaper advertisements were published advising prospective or possible purchasers of the time and place or pendency of the proposed sale or of the nature of the property to be sold; that no notice of the proposed sale was posted in, upon or about the premises where the goods were being kept prior to the sale and where they were proposed to be sold, nor within the ward or neighborhood within which the property was situated; that on the day and at the time of the sale no flag or other sign of sale was hung out; that the application for the order of sale and the conduct of the sale and the fact of the proposed sale and the sale itself were all without the notice or knowledge of

the defendants or either of them, who had no oppor-
tunity to be heard with respect thereto; that the sale
was attended by no persons save plaintiff, plaintiff's
counsel and one or two other persons there brought
by plaintiff; that under the circumstances the sale
should not have been held at that time; that under the
discretion vested in the officer it should have been con-
tinued to a more opportune time and some public no-
tice given; that the property was of the reasonable
value in excess of $4000 and that the price obtained at
the attempted sale is so low as to constitute under the
circumstances gross inadequacy and so unfair, unjust
and inequitable as to call upon the conscience of the
court to set aside the sale; that it was sold in bulk
and for a lump price, whereas it should have been
sold by the piece or by lots; that the defendants had
retained counsel to defend the suit in the attachment
proceedings and intended at the return term, which
had not yet arrived, to take the necessary proceed-
ings to defend the suit.

The court heard testimony in regard to this and
it may be said that all of the facts stated herein were
proved with the exception of the value of the property.
As to that it was in evidence that the attorneys for
the defendants had endeavored to obtain permission
for plaintiff's attorney to inspect the property and
have persons competent to appraise it view it with the
object of arriving at its value but that the counsel for
the plaintiff had refused them access to it and refused
to allow them to have it inspected by any parties and
refused them entrance to the building in which it was
contained.   During the trial, the judge remarked that
"it certainly would be unconscionable to allow plaintiff
to get $4500 worth of goods for $1350, on an *ex parte*
proceeding."   But there was no evidence, as said, as
to the value of the goods, for the reason above stated.
At the conclusion of the testimony the circuit judge
who heard the cause, he being the judge presiding over

the division to which the cause was regularly assigned but a judge other than the one who had issued the order for the sale, after hearing the evidence and taking the cause under advisement, ordered, at the succeeding October term, that the motion to set aside the sale be sustained and that the sale be set aside and vacated and the order of sale be recalled and quashed and that the sheriff, who, in the meantime had retained the check given by plaintiff in payment of the bid which she had made, return the check to plaintiff, and that the sheriff retain the property under his levy in the attachment. This order was duly excepted to at the time by the plaintiff who tendered her term bill of exceptions, which was duly signed and made of the record in the cause at that term. Afterwards, at this October term of the court, the term to which the cause was returnable, defendants appearing specially, filed their plea in abatement of the attachment. The cause was set for hearing and the issues found for the plaintiff, and a judgment entered sustaining the attachment. Afterwards at the December term of court, defendants entered their general appearance in the cause and filed a confession of judgment, on which confession final judgment was rendered in favor of the plaintiff. Whereupon the plaintiff filing a motion for new trial particularly attacking the action of the court in setting aside the order of sale, duly perfected her appeal to this court.

It is urged by counsel for the respondents that no appeal lies here by the plaintiff as the order setting aside the sale was not a final order or judgment. We cannot agree to this proposition. The order of the court setting aside the order of sale and revoking the order which it had made for the sale, it is true, was not such an order or final judgment from which an appeal would lie, until a final judgment was entered. Appeals are regulated by section 2038, Revised Statutes

1909, and while that section provides for appeals from final judgments and from interlocutory or other than final judgments in certain excepted cases, of which this is not one, it is expressly provided by this section, that "a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the parties so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case." As we understand this section and the practice, plaintiff was within her rights, although final judgment was rendered in her favor, when she took an appeal after final judgment which would bring under consideration in the appellate court the action of the trial court in setting aside that order of sale and setting aside that sale.

Taking up the appeal on its merits, we are of the opinion that the order made on the 11th of October, 1911, to which term of the court the motion to vacate had been continued, vacating the order of sale and setting aside the sale, the motion to vacate made at the same term at which the order was entered, was entirely within the power of that court. We see no reason to make any exception as to an order of this kind or why it should be taken out of the general rule, which provides that all orders of the court made during the term are subject to the control of the court during that term. It was an order made at the October term, but on a motion made at the June term, and, as held in numerous cases, was subject to the control of the court during that term. Even treating it as an interlocutory judgment, it is said by our Supreme Court in Collier v. Catherine Lead Co., 208 Mo. 246, l. c. 275, 106 S. W. 971 (quoting Black on Judgments, sec. 308):

"An interlocutory judgment or decree, made in the progress of a cause, is always under the control of the court until the final decision of the suit, and it may be modified or rescinded upon sufficient grounds

shown, at any time before final judgment, though it be after the term in which the interlocutory sentence was given."

Counsel for appellant refers us to Young v. Kellar, 94 Mo. 581, 7 S. W. 293, and Noland v. Barrett, 122 Mo. 181, 26 S. W. 692, as authority for the proposition that this sale, said not to be a judicial one but made ministerially by the sheriff, like a sale under execution, is not subject to the approval of the court, and that the sale of the property by the sheriff under such an order carries absolute title to the purchaser. We do not understand that either of these cases go to the extent claimed by counsel. It has been held in many cases that sales under execution can be set aside by the court from which the execution issued and that orders for sales may be vacated. [See Rogers & Baldwin Hardware Co. v. Cleveland Building Co., 132 Mo. 442, l. c. 454, 34 S. W. 57; State ex rel. v. Innes, 137 Mo. App. 420, l. c. 424, 118 S. W. 1168.] As before said, we see no reason why an order of this kind is any less subject to the control of the court for annulment, vacation or amendment at any time during the term by that court, as was the case here, than in any other order, even judgment. This property here claimed to have been held by the sheriff was surely in the custody of the court, and whether it had to approve the sale of it or not, until the court let go of it, it was *in custodia legis*. Ultimately it was bought in by the plaintiff herself and the rights of no third parties intervened.

The evidence in the case was entirely satisfactory to the circuit court that there had been a sacrifice of the property, although it is true that no definite figure as to its value was before the court. As appears, however, this was occasioned by the acts of plaintiff and her counsel in preventing an inspection of the property for the purpose of arriving at its true value. It does not lie in the mouth of plaintiff, therefore, to

make any complaint of a lack of evidence as to value, which evidence she had herself prevented.

The evidence before the court as to the conduct of the sale, no notice whatever or sign or indication that a sale was to take place in these premises being affixed to or anywhere near the premises in which the sale was to take place; the building not open to the public at the time of the sale; entrance to it procured, not through the front door and usual entrance which was boarded up but through a back door or a side entrance; no bidders there except one outsider, who was unknown to any of the parties and whose name or identity was not disclosed at the trial of the cause before the court, show such an abuse of the process of the court as to fully warrant it in vacating the order and setting aside the sale. The rights of no third party have intervened, even if that would prevent action, as to which we express no opinion, so that we think it was entirely within the power as well as the duty of the court, to take the action which it did. We see no error in that action and it is affirmed. *Nortoni, J.*, concurs. *Allen, J.*, not sitting.

