THE STATE ex rel. C. J. MARRS, Collector, v. R. J. WESSELL and S. W. PIERCE; F. S. KENNEY, Appellant.

Division One, November 29, 1911.

1. **JUDICIAL ACTS: Record: Amendment During Same Term.** During the whole of the term in which any judicial act is done the proceedings are considered *in fieri*, and even after judgment has been rendered the record remains in the breast of the judges and is therefore subject to amendment or alteration as they may direct.

237 Sup.—38

2. ———: ———: Execution: Setting Aside Tax Sale: Motion by
Owner. Every execution issued from a court of record must
be made returnable in term time, and so long as this term
lasts it is in the power of the court to take such steps with
reference to the execution of the process as it may think just
and prudent, upon the motion of any party to the proceeding
claiming its protection. It is *held* in this case that the court
out of which an execution issued has the right, upon motion
filed by the owner of the land during the term to which the
execution was returnable and was in fact returned, to set aside
a sale made under said execution.

3. ———: ———: ———: ———: ———: Notice by Publication.
The purchaser at an execution sale of land for taxes was the
attorney for the tax collector and the one who had instituted
and controlled the suit. He paid $95 for the land and con-
veyed it eighteen days afterwards for $350. Service by pub-
lication as against non-residents of the State was obtained
against the defendants, although both were residents of the
State and well known in the vicinity of the land. Defendant
Pierce, the sole owner of the land, had lived within ten miles
of it for seventeen years, and the deeds to him were, when the
suit was instituted, on record in the county where the suit
was brought. This record also disclosed his place of residence.
The purchaser, the attorney who instituted the suit, testified
that some one at the sale said that defendant Wessell lived
or did live at Monett or Pierce City, and he testified also that
he did not know at the time but what the title was in and
had been in defendants Wessell and Pierce jointly. Defendant
Pierce has paid into court the amount of the judgment and
costs, and the sheriff has deposited in court the remainder
of the amount bid at the sheriff's sale. It is *held*, under these
facts, that the sale was properly set aside by the trial court
upon motion filed by defendant Pierce, the owner of the land,
during the term to which the execution was returnable and
was in fact returned, although the judgment upon which the
execution issued was rendered at a previous term.

4. ———: ———: ———: Purchaser Pendente Lite. One who
buys land from the purchaser at a sheriff's sale under execu-
tion upon a tax judgment, and buys it before the end of the
return term of the execution, must stand upon the final action
of the court upon that sale. With reference to such action he
is a purchaser *pendente lite*.

Appeal from Newton Circuit Court.—*Hon. Argus Cox,*
Judge.

AFFIRMED (*as modified.*)

*O. L. Cravens* for appellant.

(1)   A motion in a suit at law cannot be made to take the place of and be substituted for a bill in equity. Phillipps v. Evans, 64 Mo. 23; Davis v. Robinson, 126 Mo. App. 293; Hull v. Sherwood, 59 Mo. 172; Holden v. Vaughan, 64 Mo. 588; Johnson v. Sherrod, 141 Mo. App. 367; State ex rel. v. Riley, 219 Mo. 667; Steel Co. v. Railroad, 165 Fed. 467; 2 Freeman on Executions, sec. 310; Rorer on Judicial Sales, sec. 965; Annison v. Williams, 54 Am. St. 51; Crawford v. Fuller, 35 Mich. 53; Spaulding v. O'Conner, 119 Mich. 45; Jewett v. Morris, 41 Mich. 689; Pipe Works v. Williams, 106 Ala. 324; State Bank v. Noland, 13 Ark. 299; Meacham v. Suderland, 10 Ill. App. 123.   (2)   The failure to notify Pierce of the issuance of the tax judgment execution was not fatal as against Kenney.   Young v. Schofield, 132 Mo. 650; Payne v. Lott, 90 Mo. 676; Schmidt v. Niemeyer, 100 Mo. 207.   (3)   The court erred in finding that Kenney was not an innocent purchaser, and in cancelling his deed.   Shelton v. Franklin, 224 Mo. 342; Griffin v. Franklin, 224 Mo. 667; Corrigan v. Schmidt, 126 Mo. 312; Payne v. Lott, 90 Mo. 676; 17 Cyc. 1298, 1301, 1306; 24 Am. and Eng. Ency. Law (2 Ed.), 67; 2 Freeman on Executions, sec. 296; Rorer on Judicial Sales, sec. 1082; Prather v. Hill, 36 Ill. 402. (4)   At all events Kenney should have been protected to the amount actually expended by him in purchasing.   Hudepohil v. Water Co., 94 Cal. 588; 2 Freeman on Executions, sec. 296; Mixer v. Sibley, 53 Ill. 61; Nelson v. Bradenbury, 81 Ind. 199; Williams v. Doran, 23 N. J. Eq. 385; Warren v. Sinson, 6 N. D. 293.

*Sizer & Kemp* and *John T. Sturgis* for respondent.

(1)   A sale of land on a writ of execution and deeds thereunder may be set aside on a motion filed at the return term of the writ, for irregularities, acci-

dent, mistake, fraud, or anything which makes the sale unlawful, unjust or an abuse of judicial process. Ray v. Stobbs, 28 Mo. 35; Norman v. Eastburn, 230 Mo. 187; Aurora v. Lindsey, 146 Mo. 509; Hardware Co. v. Building Co., 132 Mo. 442; St. Louis v. Brooks, 107 Mo. 380; McKee v. Logan, 82 Mo. 524; Wire Co. v. Scholer, 13 Mo. App. 349, 85 Mo. 499; State ex rel. v. Yancy, 61 Mo. 397; Nelson v. Brown, 23 Mo. 13; Finke v. Craig, 57 Mo. App. 393; Bank v. Terrell, 135 Mo. App. 472; State ex rel. v. Innes, 137 Mo. App. 420; Black on Judgments (2 Ed.), sec. 303. (2) Persons purchasing at an execution sale, either directly or from such first purchaser, do so subject to the right and power of the court to set aside both the sale and deeds made thereunder on motion filed at or before the return term of the execution writ, and notice given to such purchasers. The question of innocent purchaser is not material. Ray v. Stobbs, 28 Mo. 35; Wire Co. v. Scholer, supra; Malloy v. Batchelder, 69 Mo. 503; Hughes v. Burriss, 85 Mo. 660; McKee v. Logan, 82 Mo. 524; State ex rel. v. Horine, 63 Mo. App. 1; St. Louis v. Brooks, supra; Bank v. Terrell, supra; Norman v. Eastburn, 230 Mo. 168. (3) Inadequacy of price, when very gross, or when coupled with even slight irregularities, unfairness, fraud, neglect of official duties or abuse of legal powers or process, is sufficient to warrant setting aside a sale and deeds thereunder. And this is especially applicable to tax sales. State ex rel. v. Innes, 137 Mo. App. 420; State ex rel. v. Elliott, 114 Mo. App. 562; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. O'Neil, 96 Mo. 350; Davis v. McCann, 143 Mo. 172; Cole County v. Madden, 91 Mo. 585; Hardware Co. v. Building Co., 132 Mo. 442; Yeaman v. Lepp, 167 Mo. 61; Mangold v. Bacon, 229 Mo. 459. (4) (a) Constructive service on a resident of this State, on the theory and supposition that he is a nonresident, is an error of fact going to the court's jurisdiction and power to render such judgment, and

the judgment should be set aside on motion *coram nobis.* State ex rel. v. White, 75 Mo. App. 257; State ex rel. v. Horine, 63 Mo. App. 1; State ex rel. v. Heinrich, 14 Mo. App. 146.    (b)  Courts do not reverse judgments except for errors prejudicial to the appellant.   The setting aside the judgment, in addition to the sale and deeds, is not material to appellant's right, and such judgment is fully paid and satisfied.   McGuire v. Nugent, 103 Mo. 161; State ex rel. v. Boeffler, 63 Mo. App. 151; Bellessime v. McCoy, 1 Mo. 318.

BROWN, C.—This is an appeal from the judgment of the Newton Circuit Court setting aside on motion of the defendant Pierce, the owner of the land in question, its judgment in the principal suit enforcing the lien of the State for taxes of 1902 and 1903 against forty acres of land in that county, being the northeast quarter of the northeast quarter of section 11, township 26 of range 29, recalling a special execution issued thereon, and setting aside a sale made under said execution and the sheriff's deed made pursuant thereto.

The execution was issued by the clerk October 31, 1905; the sale was made during the same term on December 18, 1905, and the deed was executed and acknowledged during the same term and on December 21st.   Mr. Horace Ruark, attorney for the tax collector, who instituted and had charge of the suit, was the purchaser at the execution sale for $95.   On January 5, 1906, Mr. Ruark conveyed the land by warranty deed to the appellant Kenney for $350.  ' The execution was returnable at the April term, 1906, and was returned at that term with a report of sale.   At the same term, and on June 4, 1906, this motion was filed by the defendant Pierce.

The petition, which was signed by Mr. Ruark, states that the defendants "R. J. Wessell and Samuel W. Pierce are nonresidents of the State of Missouri,

so that the ordinary process of law cannot be served upon them in this State," and publication was made by order of the clerk in vacation. The fact is that both were residents of the State of Missouri and well known in the vicinity of the land. Mr. Pierce, who had lived in Monett, ten miles from the land, for seventeen years, was the sole owner, and the deeds by which he acquired it, which were, at the time the suit was instituted, on record in Newton county, stated correctly his residence.

Mr. Ruark stated in his testimony as his reason for not ascertaining the residence of the tax debtor: "A lawyer couldn't go and examine the records of this little tax suit where his fee will not average over $1.50 apiece." His testimony also shows that he had the assistance of an abstracter in the performance of this duty.

The motion asks the court to set aside the tax judgment, to recall the execution issued thereon and quash the same, and to set aside the sale and sheriff's deed to Ruark thereunder, and the deed from Ruark to Kenney, and states as grounds for such action the matters set forth above and many other things which we do not consider it necessary in deciding this case to mention. It also contains the following paragraph:

"Defendant further shows that part of the money paid by said Ruark for said land is yet in the hands of the sheriff, the balance having been paid on the costs of this case. That this defendant is willing and now offers to pay said Ruark or his grantee, Kenney, any costs or taxes or expenses paid out in this case, or to refund to them or either of them, the amount bid and paid for said land, and asks this court to ascertain and determine what amount is justly due said parties, or either of them, and that defendant be allowed to pay the same to them, or into court for them, on this court setting aside the sale herein and the said sheriff's deed to Ruark and his deed to Kenney."

It was called for trial on July 23, 1906, that being the 21st day of the April term, 1906, of said Newton Circuit Court, and the following entry was then made: "Now, on this day, the motion to set aside the judgment and sale of land and sheriff's deed thereunder, heretofore filed in this case on the 4th day of June, 1906, coming on to be heard, and the plaintiff being present in person and by his attorney, Ruark; who appears for himself also, and his grantee, E. S. Kenney, being present in person and by his attorney O. L. Cravens, and the defendant being present in person and by his attorney J. T. Sturgis, and the parties announce ready for trial but the court stenographer not being present, and the court not being able to hear and determine said motion at this term of court, the same is by the court, with the consent of the parties, continued for further hearing at the October term of this court."

At the October term, 1906, Kenney filed his answer to the motion, and the matter proceeded to trial, evidence being introduced by the parties in which the facts we have here stated were practically admitted; and the court rendered its judgment granting to Pierce all the relief asked in his motion; that portion of the judgment involved in the determination of this appeal being as follows:

"The court further finds that of the purchase money received by the sheriff in the sale of said land there is yet in his hands, after paying all costs and taxes in the original suit herein, the sum of $32.31, which, with the consent of said sheriff, is ordered and is now paid into the hands of the clerk of this court for the use and benefit of said Ruark and Kenney, and the defendant is ordered to deposit with the clerk the sum of $62.69 for said parties, which is accordingly done. It is therefore ordered and adjudged by the court that said motion of defendant Pierce be in all things sustained, that the judgment rendered in this cause at the October term, 1905, be set aside and for

naught held. That the sale of the land mentioned to Horace Ruark under execution under said judgment be set aside and annulled and the execution quashed and the deed to said Ruark as purchaser under said sale and judgment, and which is of record in book 26 at page 199 of Newton county land records, and the deed from said Ruark to E. S. Kenney, of record in book 68, at page 469, each purporting to convey said land, be and the same are hereby set aside and for naught held, and that the defendant Pierce be adjudged to pay the costs accruing on this motion and that execution issue therefor.''

Mr. Ruark stated in his testimony at the trial of the motion that at the time of the sheriff's sale there was a good crowd present, in which was one Horatio Sturgis; that some one spoke about the name of Mr. Wessell, and that Sturgis said that he lived or did live in Pierce City or Monett. The witness thought nothing was said about Pierce. He did not know at the time but what the title was in and had been in Pierce and Wessell jointly. After he had bought the land at the sale Mr. Marrs, the collector, came to him and said he would like to go in on it. The witness told him all right and then spoke to him about what Mr. Sturgis had said. Mr. Marrs did not go in on it.

I. It is a doctrine that has constantly received the sanction of this court that ''during the whole of the term in which any judicial act is done, the proceedings are considered to continue *in fieri,* and even after a judgment has been rendered the record remains in the breast of the judges of the court and is therefore subject to amendment or alteration as they may direct.'' [Crawford v. Railroad, 171 Mo. l. c. 74, and cases cited.] It is one of the common law powers which, under our system of jurisprudence, inheres in the constitution of every court of record, and of which it can only be deprived by statutory enactment. [Aull

v. St. Louis Trust Company, 149 Mo. l. c. 13.] Under its salutary application parties are protected from what would be otherwise the irrevocable results of hasty or inconsiderate action, and are given, before they can be finally concluded with respect to their property or personal rights, a day for hearing in open court, and after the lapse of the term at which a final judgment is rendered it continues to be the duty of the court to supervise the process by which it is enforced, and for this purpose the law has provided a day in court in which those who believe such process has been oppressively used against them may have a hearing. As has been said by this court, "it is the undoubted duty of every court to see that its process is not abused and perverted to the oppression of individuals" (Ray v. Stobbs, 28 Mo. l. c. 37), but this duty would be a barren one indeed, were not some time and place provided for its exercise. Accordingly the Legislature has enacted that every execution issued from any court of record shall be made returnable in term time, and this court has universally held that so long as this term lasts it is in the power of the court to take such steps with reference to the execution of the process as under the circumstances it may think just and prudent, upon the motion of any party to the proceeding claiming its protection. The solicitude of our courts in preserving to litigants and others this opportunity for protection and redress is illustrated in Nelson v. Brown, 23 Mo. 13. In that case the writ was filed in the office of the clerk at the return term without any indorsement upon it showing how it had been executed. At the next term the sheriff, by leave of the court, indorsed on it a return setting forth the sale of the land involved in the proceeding. This was done on January 24th, and on the 5th day of March and during the same term defendant filed his motion to set aside the sale. This court in its opinion said: "There was in fact no return of the writ until during

the term in which this motion was made. The filing of the writ without any indorsement upon it showing the manner in which it was executed, is no return. During the term at which the return was in fact filed, this motion was made. As the court lent its aid in permitting a return then to be made, by which it appeared for the first time that the writ had been executed, the incidental power of quashing that return for irregularity in the proceedings of the officer followed as a consequence.''

This court has ever since its creation had frequent occasion to mention its duty and power to control its own process in the interest of justice and humanity. It has never given any expression to a doubt of its existence. In Norman v. Eastburn, 230 Mo. l. c. 188, it said: ''The motion was filed by Paxson to set aside the sale at the return term of the execution. It is too clear for discussion that Paxson's motion to set aside the sale was made at the proper term and in the proper court. As said by BLACK, J., in Mellier v. Bartlett, 89 Mo. l. c. 137, 'Every court has the exclusive control of its process, and no other court has the right to interfere with or control it. [Nelson v. Brown, 23 Mo. 19; Keyte v. Plemmons, 28 Mo. 104; McDonald v. Tiemann, 17 Mo. 603.]' And the return term of the execution is the term at which the motion should be made. There can be no doubt of the jurisdiction of the circuit court to entertain Paxson's motion at that term.'' We must accordingly assume that in this case the circuit court had the right, if the facts indicated the propriety of such a course, to set aside the sale to Ruark upon the motion filed for that purpose.

II. That the sale of the defendant Pierce's land under the execution issued in the principal case resulted in great sacrifice to him is demonstrated by the immediate sale of the same land to the appellant in

this case for nearly four times the amount realized for the owner, and the testimony received at the trial of this motion tends strongly to show that its real value for agricultural purposes was at least four times the amount paid for it by appellant, in addition to which it has a purely speculative value as possible mining property. These values, in connection with the contest that he is now making for the privilege of paying the alleged indebtedness which constitutes the foundation of the judgment, execution and sale in question, fully justify the assumption that had he been advised of the beginning of the suit, as the law provides, he would have avoided the trouble and expense which have resulted from the subsequent proceedings by paying the demand, or defending against it should the facts have justified a defense.

The utmost to which the plaintiff is entitled is the amount of its judgment and costs, which have already been paid into the court by Pierce for its use. The sheriff has also deposited in court a sufficient sum to cover the remainder of the amount bid at the sheriff's sale, so that the entire amount bid is now in court subject to the order of the purchaser and the appellant, his grantee, and the judgment is fully paid. The only controversy is whether or not the sale should be set aside, and the purchaser relegated to the position he occupied before it occurred.

That the defendant Pierce should have received personal notice of the institution of the tax suit is unquestionable. He resided in this State, in an adjoining county to that in which the land was situated and the suit brought. His residence was a matter of record, where it was the duty of Mr. Ruark, the attorney who instituted the suit, to find it, and having found it to cause summons to issue against him and service to be made in such a manner as would bring to his actual knowledge the beginning of a proceeding having for its object the appropriation of his

property, if necessary, to discharge his alleged liability to the public for unpaid taxes. The law authorizing notice to nonresidents by publication, substitutes a fiction for the notice which, whenever practicable, should constitute the real foundation of every judicial inquiry, for the purpose of reaching those who, being voluntarily beyond the jurisdiction of the court, cannot, by its process, be more directly informed of its proceedings. As to this imperfect substitute, Mr. Wade, in his Law of Notice (2 Ed.), sec. 1030, says that it depends for its validity more upon its strict conformity to the statute by which it is authorized than upon any inherent probability of its conveying intelligence of the impending suit to the party whose rights are to be affected.

The statute which authorizes the courts of this State to render judgments in such cases as we are now considering, upon imputed notice by publication, does not by its terms confine its operation to those who are actually nonresidents of the State, but it provides that if the plaintiff or other person for him *shall allege in his petition* that a defendant is a nonresident of the State the clerk of the court in vacation shall make an order directed to him, notifying him of the commencement of the suit, and that if he fails to appear on the day named, and answer, the petition will be taken as confessed. [R. S. 1909, sec. 1770.] In State ex rel. v. Clarkson, 88 Mo. App. l. c. 558, the St. Louis Court of Appeals, referring to the application of this statute to the facts of a case like this, said: "Had the officers of the law, entrusted with the enforcement of tax liens in Howell county, been guided by what was before them, appellant could and would have been personally served with summons and had his day in court. Instead of affording him this opportunity, that method of procedure was adopted, which the statutes provide for, whereby a valid judgment was obtained against the appellant for the non-payment of taxes assessed

against his lands, without actual notice to him. It is alleged in the petition in the tax suit that the appellant was a nonresident of the State. This allegation made it the duty of the clerk of the Howell Circuit Court to make an order of publication in vacation. . . . This order of publication was duly published and proven. In Tooker v. Leake, 146 Mo. l. c. 429, speaking of a similar order made in a tax case under like circumsances, the court, through BRACE, J., said: 'When so published and the publication proved, the defendants in said action are as effectually served with process as if served by summons, and a final judgment rendered upon such service is just as conclusive as a judgment rendered upon service of summons, except that the defendant in the former case may within three years after the rendition thereof have the same reviewed and set aside for good cause as provided in Revised Statutes 1889, section 2217, et seq.' ''

It is not strange that persons with an eye open to such opportunities should see in such a statute, so construed, possibilities for profitable fraud. Without the danger that attends the making of a false affidavit they might sue their next door neighbor for the enforcement of a lien existing only in a diseased imagination and allege in the unsworn petition the nonresidence of the defendant; and except for the slender chance that the neighbor might hear of the proceeding, procure a judgment, have the property sold to an innocent purchaser, and, after the lapse of the term to which the execution would be returnable, defy the real owner to reclaim it. It goes without saying that in the face of such opportunities it is necessary that the courts be watchful and ready, by the exercise of their judicial authority, to prevent such abuse of their process whenever their jurisdiction is available. Equity jurisdiction is an ineffective substitute for this control because it assumes that the remedy at law has become extinguished, that the transaction is no longer

*in fieri,* that it has become a completed act by which the rights of innocent purchasers in good faith have become fixed, and must be protected, even against the party who suffered the original wrong.

Mr. Ruark, purchaser at the execution sale which it is now sought to set aside, was, at the time the suit was brought, the attorney for the collector of the county having in charge the collection of the delinquent taxes, and in that capacity instituted and controlled this particular suit. It was his duty to see that proper notice was given to those whom he made defendants and against whom he sought judgment. In this particular case information as to the residence of the defendants was easily available at the very place where the law required him to look for it, because it was necessary that he should ascertain the owner of record, and the only record from which this could be ascertained, also gave the residence of each one of them. Although he had an abstracter to assist him in securing this information, he did not in this case avail himself of his services. Instead of doing so he made the untrue statement in his petition that the defendants were nonresidents of this State, and using this untruth as his justification for a proceeding of which they had no actual notice or knowledge, attempted by the same proceeding to obtain the land at a price which, as demonstrated by the amount he received for it from the appellant, involved great sacrifice to the owner. The only excuse he now has to offer for the false statement by which he sought to invoke the jurisdiction of the court is that "a lawyer couldn't go and examine the records of this little tax suit where his fee will not average over $1.50 apiece," an excuse which does not recommend itself to a profession which recognizes the duty to perform faithfully such services as its members may undertake, regardless of the amount of the stipulated fee.

If Mr. Ruark really desired, in the interest of justice, to correct the mistake that he had made, if it was a mistake, and to protect the defendants against any loss not already suffered on account of it, it came to him at the sale, which occurred several months before his execution was returnable. At that time, according to his statement, he still thought the title was in Pierce and Wessell jointly, and heard Mr. Sturgis say that Wessell lived in Pierce City or Monett. He thought that nothing was said at the time about Pierce, but did not seem willing to testify to that fact directly and positively, although the conversation assumed so much importance in his mind that he told it to his client, Mr. Marrs, who was considering the question of going in with him on the purchase. There was nothing in the world to hinder his taking part in this conversation, and such information as he got should have determined him, if jurisdiction in the case had been wrongfully acquired, to have suspended the sale until the owner should have an opportunity to protect himself: The time was ample in which to have done this during the life of the execution. Instead, however, of taking this course he hastened to make his purchase and realize his profit, completing the transaction when there was still three months to elapse before his execution would be returnable.

It is clear that so far as Mr. Ruark is concerned he ought not to be permitted, as against Mr. Pierce, to retain the profits of his own wrong. The soundness of this proposition does not seem to be seriously questioned by the appellant, but he does urge, as we understand his argument, that at the time this motion was filed the judgment, by the lapse of the term in which it was rendered, had passed its period of repose in the breast of the judges of the court, and, being regular on its face, could not be attacked by motion, but could only be questioned by an equitable proceeding instituted directly for that purpose, and that it follows

that the execution issued to enforce it is equally immune.

It was said by this court in Ray v. Stobbs, supra, that "every one taking title under the process of a court must be understood as taking subject to the approval by the court of the proceeding had under it." We have already seen that the supervision of the court over the execution of its final process extends throughout the entire term to which it is returnable. During all this time it is its duty to see that the process is not abused or perverted to the oppression of individuals, and in case of an execution sale there is scarcely any fraud or irregularity either in the issuing, form, or execution of a writ which may not be made the occasion for a motion to vacate such sale. [McKee v. Logan, 82 Mo. 525.] In fact the control of the court over such process and all proceedings under it is absolutely within the limits of a sound discretion. The only question to be asked and answered in such a case seems to be, should the action complained of be permitted in justice and good conscience to stand. In this case the property of an individual was sacrificed in a proceeding of which he had no notice or knowledge, and therefore no opportunity to protect it. Were it a scheme deliberately devised for that purpose we would expect the same methods to be adopted that we find here. The first step is to give the court jurisdiction to proceed to the entry of a final judgment and the issue and execution of final process to enforce it, by means that involve the concealment from defendant of the institution and pendency of the suit. Then comes the entry of the judgment, which of itself works no actual wrong, but only contains the potency for wrong to be worked through its final process, the crowning act in the judicial sequence. When this is issued and lays hold on the property of the defendant, and appropriates it, the series of acts which perpetrates the wrong is com-

plete. Each judicial step is under the control of the court during its progress and may then be cut from the chain, every link of which is necessary to the accomplishment of the scheme.

Assuming that the judgment was valid until it should be set aside in a direct proceeding for the purpose, as asserted by the appellant, the interests of the parties to the sale at the time the motion to set it aside was filed were as follows: 1. The plaintiff had the right to have its judgment paid by the defendant or in default of such payment to make it out of the property against which it was rendered. This seems to be the paramount right involved in the proceeding. 2. The defendant had the right, if resort was had to the property, to have it honestly and fairly applied as far as was necessary to the satisfaction of the judgment. 3. The purchaser had no interest except his desire to acquire the property, which he could only do as an incident to the litigation between the parties. The defendant came into court with this motion, and tendered, while the execution of the final process was still pending, the full amount of the judgment and costs. With this tender the pending proceeding fell to the ground, so far as the plaintiff was concerned. Can the purchaser pick it up, and successfully demand that it be completed for his benefit? We hold that he cannot; first, because, as attorney, he stands in place of the plaintiff who had attained the full measure of the redress which he sought while yet his process was *in fieri,* and, second, because it was he who wrongfully prevented the satisfaction at an earlier stage of the proceeding, and cannot be permitted, at the expense of the defendant, to profit by his own wrong. He claims that it is too late to object to the sale as against him, because his failure to perform his duty has already borne the fruit for which it was planted—a judgment of the court. The answer to

237 Sup.—39

this is, that the notice is not for the sole purpose of procuring a judgment, but to inform the defendant, and enable him to keep himself informed, of every possible proceeding that might flow from the original process.

III. But it is claimed by the appellant that by his own purchase while the execution was yet outstanding, he has acquired a title unaffected by the infirmities of the title acquired by the purchaser at the sheriff's sale. It is a sufficient answer to this to say that the court, upon this motion, has nothing to do with his transaction with Mr. Ruark. The question is whether the sale to the latter should be permitted to stand; and as to this the appellant is a purchaser *pendente lite* subject to the final adjudication by the court. As a matter of fact the sheriff's sale was made at the same term at which the judgment was rendered. Had the court seen fit, pursuant to its unquestionable powers, to have set aside the judgment at that term, could it be maintained that, by reason of his purchase, he could embarrass or destroy the jurisdiction of the court over the cause which was pending, subject to this action, during the entire term? The same jurisdiction, independent of the interference of strangers, attached to the execution of its final process during the term at which it was returnable. Every one taking title under the process of a court must be understood as taking subject to the approval of the proceedings had under it, and no haste on the part of a stranger to intervene can take away the jurisdiction to approve or disapprove (Ray v. Stobbs, supra). For these reasons the title of the appellant, so far as it depends upon, or is acquired through or under, the sheriff's sale to Ruark, must stand upon the final action of the court upon that sale. With reference to such action he is a purchaser *pendente lite*.

IV. With respect to the action of the court in setting aside the judgment, it is a matter in which these litigants have no interest, and we do not wish to be understood as deciding, either directly or indirectly, any question relating to the jurisdiction of the court over such a judgment, by motion filed, as in this case, at a term subsequent to its rendition. It is asserted by the respondent, and is no doubt true, that a motion to vacate a judgment under our practice will, in proper cases, be taken and considered as in the nature of a writ of error *coram nobis,* by which matters going to the jurisdiction of the court to render the judgment, and not appearing upon the record, may be made effective for that purpose. Although this may be a case of that character, the motion itself, as well as the action of the court under it, is inconsistent with that theory. The motion tenders satisfaction of the judgment, and the court, to all intents and purposes, makes its satisfaction a condition precedent to setting it aside. In other words the judgment is to be vacated after it has been extinguished by satisfaction or a continuing tender equivalent thereto. It appearing from the record before us that the entire amount of the principal judgment and costs has already been deposited in the court, this judgment should be so modified as to direct its satisfaction of record instead of its vacation. It should also direct, in substance, that the sale by the sheriff to Horace Ruark under the execution issued upon said judgment be set aside, and that the deed of the sheriff to said Ruark as purchaser at said sale, which appears of record in book 26 at page 199 of the Newton county land records, be set aside and for naught held so that neither the said Ruark nor said Kenney nor any one claiming by, through, or under them, or either of them, shall take, have or hold any right, title or interest to or in said land under or by virtue thereof. This, while divesting Ruark and Kenney and all claiming under them of any title founded

upon the sheriff's sale and deed, will leave all questions which may arise between Ruark and Kenney with respect to the subsequent deed between them, or any covenant thereof, to be settled between themselves. In all other respects the judgment of the circuit court seems to be fully justified by the record.

The defendant Pierce should pay the costs of this appeal and judgment will be entered here to that effect.

The cause is accordingly remanded to the Newton circuit court with directions that its judgment be modified and entered in accordance with the views herein expressed.

*Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.