THOMAS M. BLACK and VIRGINIA I. BLACK v. JOHN BANKS, J. S. ARMSTRONG and J. C. DAY, Appellants.—37 S. W. (2d) 594.

Division One, March 31, 1931.

J. A. *Sturges*, for appellant.

*D. H. Kemp* for respondents.

STURGIS, C.—This suit is to determine title to eighty acres of land in McDonald County. The petition is in two counts, the first in conventional form under the statute, and the second specifically praying the court to set aside the judgment, sale and sheriff's deed entered and made in and as a result of a suit for taxes against said land. The pleadings need not be discussed, as same made the case one in equity, resulting in a judgment setting aside the sheriff's sale and deed conveying the land to defendant Armstrong and a deed from him to defendant Day, and vesting the title in plaintiffs. The plaintiffs offered in their petition, and the court required them to pay into court, for defendants' use, a sufficient amount to make good the amount defendant Armstrong paid for the land at the tax sale. This amount had more than paid the judgment and costs of the tax suit and sale thereunder. The defendants have appealed.

It is conceded that the title to this land was in plaintiffs at the time and prior to the tax suit, judgment and sale thereunder; and

the defendants claim title thereunder, and as against any defects or irregularities in the tax suit, judgment or sale, defendants claim to be innocent purchasers for value and without notice.

The suit for taxes resulting in the sale of plaintiffs' land was commenced in June, 1926, for the taxes of 1923, and judgment was entered in usual form at the August Term, 1926, of the McDonald County Circuit Court. There was an allegation of non-residence of the defendants in the tax suit (plaintiffs here) and the only service had was by publication in a newspaper of that county. It is alleged and proven, without contradiction, that these plaintiffs, defendants in the tax suit, never had been non-residents of this State, and at that time their residence was at Kansas City, in Jackson County. It is also shown and conceded that these plaintiffs had no actual notice or knowledge whatever of the institution or pendency of the tax suit against their land or the judgment or sale of the same till nearly a year after such sale and the recording of the sheriff's deed. The sale took place at the February Term, 1927, and the sheriff's deed to defendant Armstrong, the purchaser, was at once made and recorded, and about a week later Armstrong conveyed the land to defendant Day by warranty deed, though defendant Banks was the real purchaser from Armstrong. As soon as plaintiffs learned that their land had been thus sold for taxes, they promptly investigated the matter and brought this suit.

It should be said in this connection that plaintiff Thomas M. Black had been reared and was engaged in business in the vicinity of this land and was well known there, and there his father and one or more brothers had lived and died, and there one brother and other relatives were yet living. Also the plaintiff was frequently in that neighborhood and had been there much of his time in recent years in connection with the settlement of a brother's estate. He had bought this land in 1924, about eighteen months prior to the commencement of the suit for taxes and the making of the order of publication, and his last muniment of title was a recorded trustee's deed to him on a foreclosure of a deed of trust, reciting therein that he, as grantee, was of Jackson County, Missouri.

The County Collector who brought the suit for taxes had employed and was assisted by an abstract firm whose duty it was to examine the records and ascertain the present or record owners of the land. Such information was then used by the Collector and tax attorney in bringing suits for taxes. In this particular case the land had not been assessed against plaintiffs as owners, and in ascertaining the record owners the abstracter must have looked at this deed and ascertained not only that plaintiffs were the record owners, but that they resided in Jackson County, Missouri. In addition to this available and actual information as to plaintiffs' residence, the County Collector had received and answered a letter from plain-

tiff in December, 1924, asking for a statement of the taxes, current and delinquent, on this land. This letter and reply gave plaintiffs' Kansas City address. The Collector's only explanation of why the suit was brought and order of publication had against these plaintiffs as non-residents is that he had forgotten the correspondence and did not personally examine the deed records. The tax attorney made the same excuse. It should be further said that in December, 1926, after the tax suit was brought and judgment taken, but before the sale of the land under execution, the plaintiff again made inquiry by letter as to the taxes on this land and paid to the Collector the taxes for 1926. This correspondence also gave plaintiffs' address at Kansas City.

As a result of this tax suit and sale, plaintiffs' land was sold for and purchased by defendant Armstrong for $91, which was slightly more than enough to pay the judgment and costs. All this was done without plaintiffs' knowledge and with no opportunity to protect their interests. The fact that they are willing and anxious to be allowed to pay the judgment and costs, and have now done so, shows that they would have paid the taxes before judgment, or the judgment before the sale of their land, if they had known of same and been given an opportunity to do so.

It is well said in State ex rel. v. Wessell, 237 Mo. 593, 609:

"The answer to this is, that the notice is not for the sole purpose of procuring a judgment, but to inform the defendant, and enable him to keep himself informed, of every possible proceeding that might flow from the original process."

The purchaser, Armstrong, at once after his purchase entered into negotiations with defendant Banks, who owned land adjoining that in controversy, and about a week later sold him the land for $350, the deed being made to defendant Day, his son-in-law, who gave a deed of trust to Banks for a like amount. This was about four times what Armstrong paid for the land, and defendants say that this was all it was worth. Plaintiffs' witnesses say that the land was worth from $15 to $20 per acre.

Laying aside, for the present, the question of innocent purchaser, we think that plaintiffs are clearly entitled to relief. It is fundamental and essential to due process of law that persons living in this State be given actual notice of suits affecting their property rights, and an opportunity to be heard and take steps to protect such rights both before and after judgment. It is only when persons are living outside the State and beyond the reach of the court's process, or are concealing themselves or evading service of process, that a court is warranted in proceeding to judgment and sale of property on mere published notice. In a case quite similar to this on the point now under discussion, State ex rel. v. Wessell, 237 Mo. 593, 603, this court said:

"That the defendant Pierce should have received personal notice of the institution of the tax suit is unquestionable. He resided in this State, in an adjoining county to that in which the land was situated and the suit brought. His residence was a matter of record, where it was the duty of Mr. Ruark, the attorney who instituted the suit, to find it, and having found it, to cause summons to issue against him and service to be made in such a manner as would bring to his actual knowledge the beginning of a proceeding having for its object the appropriation of his property, if necessary, to discharge his alleged liability to the public for unpaid taxes. The law authorizing notice to non-residents by publication, substitutes a fiction for the notice which, whenever practicable, should constitute the real foundation of every judicial inquiry. As to this imperfect substitute, Mr. Wade, in his Law of Notice (2 Ed.) sec. 1030, says that it depends for its validity more upon its strict conformity to the statute by which it is authorized than upon any inherent probability of its conveying intelligence of the impending suit to the party whose rights are to be affected."

And again at page 606:

"It was his duty to see that proper notice was given to those whom he made defendants and against whom he sought judgment. In this particular case information as to the residence of the defendants was easily available at the very place where the law required him to look for it, because it was necessary that he should ascertain the owner of record, and the only record from which this could be ascertained, also gave the residence of each one of them."

It is true that in that case relief was sought by a motion in the original tax suit filed by the landowner before the end of the term of court at which the execution was returnable, but that relief in such cases is not wholly dependent on the remedy in that form is recognized when the court further said:

"The soundness of this proposition does not seem to be seriously questioned by the appellant, but he does urge, as we understand his argument, that at the time this motion was filed the judgment, by the lapse of the term at which it was rendered, had passed its period of repose in the breast of the judges of the court, and, being regular on its face, could not be attacked by motion, but could only be questioned by an equitable proceeding instituted directly for that purpose, and that it follows that the execution issued to enforce it is equally immune."

This question came before the St. Louis Court of Appeals in State ex rel. v. Heinrich, 14 Mo. App. 146, where the defendant in a tax suit was a resident of St. Louis and the only notice of the suit was by an order of publication against her as a non-resident. Her property was sold under execution on such judgment and she sought relief by a motion in the nature of a writ of error *coram nobis*.

It was there held that the error of proceeding against a resident of the State on the theory that he was a non-resident and could be legally notified by a publication only, was such an error of fact that the judgment so rendered would be set aside on such motion. In the course of the opinion, Judge THOMPSON, an eminent judge and law writer, said:

"If a suit may be commenced specially against the property of any one within the reach of the ordinary process of the court, and the person be notified in no other mode than by advertisement printed in a newspaper, which may or may not, according to mere accident or chance, impart actual knowledge of the proceedings to him, and if in the particular case it does not impart to him such knowledge, and a judgment is rendered therein, and by virtue of this judgment his freehold is taken from him, he remaining all the time in entire ignorance of the proceeding, I think the suggestion that he has been disseized of his freehold contrary to the law of the land, or, what is synonymous in meaning, without due process of law, is a suggestion deserving of serious consideration. I can see little in such a law which deserves to be characterized as a law which proceeds upon notice and which hears before it condemns."

In Hadley v. Bernero, 103 Mo. App. 549, 561, so learned a Judge as GOODE said that, the motion which in our practice takes the place of the writ of error *coram nobis* and results in setting aside a judgment for an error of fact which, if it had been known to the court, would have prevented the judgment being entered, "lies when a party against whom a judgment was rendered was not served with process (Craig v. Smith, 65 Mo. 536); or when judgment went on publication and the defendant was within the jurisdiction of the court and could have been personally served."

And in State ex rel. v. Horine, 63 Mo. App. 1, 6, the court said:

"The only theory on which the order of publication was made against the defendants in the tax suit was that they were non-residents. That this assumption was an error of fact on the part of the court appears from the undisputed testimony showing that the defendants have been for many years, and are now, residents of Greene County, Missouri. As it is not claimed that the defendants in the tax suit were personally served, and as the only basis for constructive service upon them by the order of publication was an error of fact in the finding of the court that such defendants were non-residents, it is not perceived how any valid judgment could have been rendered against them in that suit."

It is true that this court in Simms v. Thompson, 291 Mo. 493, 523, criticised the case of State ex rel. v. Heinrich, 14 Mo. App. 146, and the criticism may be applicable to the other Court of Appeals cases mentioned, for holding that the error of rendering judgment against a resident of this State where the only service was by pub-

lication, as against a non-resident defendant, was such an error of fact as could be corrected by a motion in the nature of a writ of error *coram nobis,* but held that the conclusion reached and the judgment entered by the Court of Appeals was correct, though the procedure should have been called by another name, to-wit, a motion to review. The court had previously said, however, in this case, page 518, that relief on the ground of fraud, accident or mistake would not be granted, under our practice, on a motion in the nature of a writ of error *coram nobis,* as such matters were proper grounds for equitable relief, which is the remedy here employed.

Nor is the relief granted in cases of service by publication on resident defendants based on a total want of jurisdiction of the court to render any judgment in such case. The *allegation* of non-residence in the petition or affidavit authorizes the order of publication rather than the *fact* of non-residence, and when duly published in a suit *in rem* gives the court jurisdiction. [Tooker v. Leake, 146 Mo. l. c. 429; State ex rel. v. Wessell, 237 Mo. 593, 604; Simms v. Thompson, 291 Mo. 493, 521.] There may be grave doubts, however, as to whether a statute authorizing service on a resident defendant in a suit affecting his property by merely alleging in the petition his non-residence and publishing a notice in a newspaper, which rarely confers actual notice except by chance, does not violate the due process of law clause of the Constitution. [State ex rel. v. Heinrich, 14 Mo. App. 146, 151; Dorrance v. Dorrance, 242 Mo. 625, 651.] At least a suit in equity to set aside the judgment and sale and deed thereunder is a proper remedy to correct such an error, for, as said in State ex rel. v. Wessell, supra, l. c. 605:

"Without the danger that attends the making of a false affidavit, they might sue their next door neighbor for the enforcement of a lien existing only in a diseased imagination and allege in the unsworn petition the non-residence of the defendant; and except for the slender chance that the neighbor might hear of the proceeding, procure a judgment, have the property sold to an innocent purchaser, and, after the lapse of the term to which the execution would be returnable, defy the real owner to reclaim it. It goes without saying that in the face of such opportunities it is necessary that the courts be watchful and ready, by the exercise of their judicial authority, to prevent such abuse of their process whenever their jurisdiction is available. Equity jurisdiction is an effective substitute for this control because it assumes that the remedy at law has become extinguished, that the transaction is no longer *in fieri,* that it has become a completed act by which the rights of innocent purchasers in good faith have become fixed, and must be protected, even against the party who suffered the original wrong."

We hold that the plaintiff County Collector in bringing the tax suit was chargeable with the notice contained in the deed of con-

veyance to the party being sued as record owner, showing his residence in Jackson County, Missouri, and that he was not a nonresident. This court so held in State ex rel. v. Wessell, 237 Mo. 593, 606.

Are the defendants, or any of them, entitled to protection as good faith purchasers for value without notice of the fatal defects in the tax suit proceedings and sale? The defendant Armstrong, as purchaser of this land at the sale for taxes, was also required to take notice not only that plaintiffs were the record owners of the land, but also that such record disclosed their residence in Jackson County. He was also charged with knowledge of the method of service on the defendants in the tax suit resulting in a judgment and execution sale. Also defendants Banks and Day, in purchasing from Armstrong, took title with the same knowledge. This court in Simms v. Thompson, 291 Mo. l. c. 520, quoted with approval this statement of the law: "It is well settled law in this State that 'a purchaser of land is charged with constructive notice of everything contained or recited in the recorded deeds which lie in and constitute the chain of title under which he holds.'" [McDonald v. Quick, 139 Mo. 484, 498; Marshall v. Hill, 246 Mo. 1, 30; Adams v. Gossom, 228 Mo. 566, 582.]

Armstrong's evidence is, in effect, that he was connected with a bank at Pineville, where the sale was had, and attended the sheriff's sale on this and other occasions to pick up bargains; that he knew nothing of this land or of the title or ownership; did not know the character of the land or improvements or value, except the general location and the character of land in that part of the county; that he made no inquiry as to the title, the service of process, or any facts connected with the sale; that he bought purely for speculation. Immediately after the sale he made inquiry as to the location and kind of land, etc., and on learning that defendant Banks owned land adjoining, he entered into negotiations for the sale of the land to him. Banks said that his son-in-law Day might buy it and in a few days a deal was consummated by which Armstrong conveyed the land to Day by warranty deed, for $350, Banks furnishing the money and taking a deed of trust for that amount as security. This deal was consummated within a week or ten days after the sheriff's sale. Both Banks and Day say they knew nothing of the tax suit or sale till informed of it by Armstrong, and then made no inquiry into the proceedings had. The evidence impresses us that they bought relying on the warranty deed from Armstrong and willing to take a chance on the title. We also think it sufficiently appears that this present suit is being defended by Armstrong rather than Banks or Day. As has been before stated, plaintiff was well known in the vicinity of this land, where he had lived and been in business and where his kinsmen were yet living. Both Banks and Day

were acquainted with him and knew he had visited and attended to business frequently in that vicinity in recent years. Banks owned land adjoining the land in question and Day had been and was at the time cultivating part of this land as a "squatter" without paying rent to anyone. A year or so prior to this tax suit, plaintiff visited Day, who lived near the land and was then cultivating part of it, and told him that he would have to take this land by a foreclosure sale and they talked about Day buying or leasing it in that event. These facts and circumstances, with others not necessary to detail, were sufficient to have placed defendants on inquiry, and they could readily have ascertained that plaintiff's land had been. sold without notice to him or knowledge on his part. It is apparent, too, that the land sold for a very inadequate price. Armstrong bought it for a little over one dollar per acre and at once sold it for $350, a substantial gain. From the whole evidence, we are justified in finding its fair valuation to be at least ten dollars per acre, and the small price paid by Banks and Day may have helped close their eyes to inquiry and investigation of how Armstrong got title. Inadequacy of the purchase price, even if not sufficient in itself to warrant setting a sale aside, is always a potent circumstance. [Rogers v. Dent, 292 Mo. 576, 586; Mangold v. Bacon, 237 Mo. 496.]

Respondents also raise the point that the defendant in the execution sale, residing in a county other than that in which the land is situated and the sale had, was entitled to notice of such sale (Sec. 1651, R. S. 1919; Harness v. Cravens, 126 Mo. 233, 260; Young v. Schofield, 132 Mo. 650); but under the view that we have taken of this case, it is not necessary to discuss this point.

The trial judge reached the correct conclusion in the case and the judgment should be and is affirmed. *Seddon* and *Ferguson, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.