The CITY OF ST. LOUIS, a Municipal Corporation (Plaintiff), Appellant,

v.

John A. PECK et al., Defendants,

and

Temple Herron Finley, Movant, to Set Aside Sheriff's Sale of Land Described in Item 1001, Respondent,

James Herron et al., Heirs of Elie Bowers, Movants, to Set Aside Sheriff's Sale of Land Described in Item 1002, Respondents,

Montgomery Berry et al., Movants, to Set Aside Sheriff's Sale of Land Described in Item 1003, Respondents.

No. 30107.

St. Louis Court of Appeals.

Missouri.

Jan. 9, 1959.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 2, 1959.

Charles J. Dolan, Acting City Counselor, Oliver T. Johnson and Andrew J. Reis, Assoc. City Counselors, St. Louis, for appellant.

Dewey S. Godfrey, Jr., St. Louis, for respondent Finley.

Sigoloff & Sigoloff and J. E. Sigoloff, St. Louis, for other respondents.

Schurr & Inman, for Globe-Democrat Pub. Co., amicus curiae.

HOUSER, Commissioner.

This is an appeal by the City of St. Louis from an order of the circuit court of that city sustaining three separate motions filed by three different parties to set aside execution sales of three separate parcels of land for the non-payment of three separate benefit assessments made in the course of the condemnation proceedings in which Twelfth Street was widened.

In 1947 the circuit court entered judgment in the condemnation suit assessing benefits against numerous parcels of land, fixing the assessment against the land described in Item 1001 at $204, in Item 1002 at $67.50 and in Item 1003 at $42. The assessments against these and various other parcels of real estate not having been paid, the court in the year 1957, on motion of the condemnor, ordered executions to issue directing the sheriff to sell the property described in Items 1001–2–3 and in forty-seven other items. Pursuant to that order the sheriff advertised the sale of the fifty items for Friday, April 12, 1957, "between the hours of nine o'clock in the forenoon and five o'clock in the afternoon." At nine o'clock on the morning of the sale a deputy sheriff went to the east front door of the Civil Courts Building, read the advertisement of the fifty parcels, and asked for bids. The city made the first bid on all of these items, a single bid in the amount of the assessments, costs, fees and charges. Mr. Ray Dady bid $1 more than the city's bid on Items 1001–2–3, whereupon the deputy "knocked it down to Mr. Dady." At that time the deputy also sold Items 1004 and 3876 (not involved here) to one O'Toole, who bid $1 more than the city bid on those two items. Announcement was made concerning the other forty-five items that, no competitive bids having been received, the deputy would come back at twelve o'clock "to see if we could get more money." Mr. O. P. Paulus appeared about ten minutes before twelve o'clock at the Civil Courts Building to bid on Items 1001–2–3. He was acting as a representative of Mr. Paul F. Brune, a realtor. Mr. Brune had an earnest money contract, signed by all but one of the heirs of the deceased owner, for the sale of these three lots to Mercantile Trust Company for $8,500. Relative to the bids Mr. Brune had authorized Mr. Paulus to go considerably in excess of the amount of the taxes, costs, etc., against the property. He had instructed Mr. Paulus, after deducting the "taxes" (apparently from $8,500) "to go up to that point." At twelve o'clock the deputy read the forty-five items. The city bid the amount of the judgment, costs, etc., on the forty-five items and the deputy knocked them down to the city, "no competitive bids having been received." Item 1983 (not involved here) was bid in by Mr. Paulus, acting for Mr. Brune, in the name of Alice Johnston, for an amount $25 in excess of the amount of the judgment, costs, etc. When the deputy came to Items 1001–2–3 Mr. Paulus was informed that they had been sold at nine o'clock that morning. Mr. Paulus requested the deputy to offer those items for sale and notified him that he was ready and willing to bid on them and to make a better bid, but the deputy did not reoffer those items.

The movants showed the existence of a fifty-year custom and usage in the City of St. Louis with respect to judicial sales of real property at public auction under which judicial sales, advertised to be held between the hours of nine o'clock a. m. and five o'clock p. m., are usually conducted at twelve o'clock noon; that locally the words in an advertisement "to be held between the hours of nine o'clock in the forenoon and five o'clock in the afternoon" have come to mean "twelve o'clock" and that this is true in the case of all judicial sales, without dis-

tinction ·between execution, foreclosure, special commissioner or other kinds and types of sales. Exceptions to the custom were noted where the advertisement specifies a particular hour between nine and five, or where the person conducting the sale appears at twelve o'clock and makes an announcement that the sale would be held later in the day and before five o'clock.

The city showed the existence of a practice of the sheriff's office, which had persisted for twelve and one-half years, in execution sales, to appear at the designated place at *nine o'clock* on the morning of the day of sale, read the advertisement publicly and ask for bids in competition with the city's bid of the amount of the judgment, costs, etc. It was conceded, however, that in the twelve and one-half years prior to April 12, 1957 no one had ever appeared at that time of the morning with a competitive bid, and that of the four hundred or five hundred sales thus advertised and in which this practice obtained there had been no sales at the nine o'clock call. In all such cases the deputy· would announce that the sale would be held at twelve o'clock and he would tell "them" (apparently referring to the city's representative) to come back at twelve o'clock. The reason given for the adjournment of the sale to twelve o'clock was that "there are more bidders at that time," and that the city was interested in getting competitive bids; that the city wanted the money, not the property. If there was no competitive bid at twelve o'clock, the· sale would· then be held at two p. m.; if no competitive bid at two o'clock, the sale would be held at five p. m.; if no competitive bid at five o'clock, the sale would be held the next morning at nine o'clock. If there was a competitive bid the property would be sold. The sale to Mr. Ray Dady was the first time that a "competitive" bid had been received at a nine o'clock call and the deputy, deeming it a "good bid," knocked it down to him.

Messrs. Paulus and Brune testified that neither inquired of the sheriff's office prior to the day of the sale as to the time the sale would be conducted. They did not think it was necessary. The deputy sheriff testified that the sheriff's office received twelve to fifteen inquiries as to the time when the sale would be conducted, including a call from Mr. Brune's office, and that all who made inquiries were informed that the sale would commence at nine o'clock a. m. We resolve the conflict in the evidence as to whether the deputy sheriff orally informed the office of Mr. Brune that the sale would commence at nine o'clock against appellant, in deference to the trial court's superior opportunity to assess the weight and value of the testimony of the witnesses who appeared before him.

Testimony was introduced in support of these facts and figures concerning the properties in question:

| Parcel | Amount of Special Assessment | General Taxes | Sale Price to Ray Dady | Actual Market Value | Value Alleged in Motion |
|--------|------------------------------|---------------|------------------------|---------------------|-------------------------|
| 1001 | $204.00 | $1,490.22 | $617.92 | $3,700.00 | $4,000.00 |
| 1002 | 67.50 | 360.61 | 410.27 | 2,800.00 | 3,000.00 |
| 1003 | 42.00 | 530.09 | 355.27 | 1,500.00 | 2,500.00 |

Mr. Brune testified that the market value of the three lots, taken together, was $8,-500.

The statute under which these sales were conducted, section 513.235 RSMo 1949, V. A.M.S., provides as follows:

"All property taken in execution by any officer shall be exposed to sale on the day for which it is advertised, between the hours of nine in the forenoon and five in the afternoon, publicly, by auction, for ready money, and the highest bidder shall be the purchaser."

Appellant's first point is that the court erred in finding that the sales were not valid, since they were regular in every respect, and made at the time required by statute, as set out in the advertisement and as announced by the sheriff. Appellant contends that the deputy followed the law in holding the sale at nine o'clock, received competent bids and was bound to recognize the highest bidder as the purchaser; and having accepted the bid of the highest bidder could not resell the properties at the twelve o'clock call. Appellant further contends that the custom of selling at auction at twelve o'clock does not affect the validity of the sale.

■ A motion to set aside an execution sale is addressed to the sound discretion of the court issuing the process. State ex rel. Marrs v. Wessell, 237 Mo. 593, 141 S.W. 883; 33 C.J.S. Executions § 240. The question in such case is whether the action complained of should be permitted in justice and good conscience to stand. State ex rel. Marrs v. Wessell, supra; City of St. Louis v. Miller, 336 Mo. 1122, 82 S.W.2d 579. It is the duty of the court to see that its process has not been executed in an illegal or oppressive way and to give summary redress if its process is abused or perverted. Ray v. Stobbs, 28 Mo. 35. Execution sales may be set aside upon motion of parties, not only in cases of fraud or where inadequacy in the sales price is so great as to shock the judicial conscience, but also in cases of irregularity in the conduct of the sale to the prejudice of any party having an interest in the action, or cases of accident or surprise where because of some misunderstanding, mistake, misapprehension or other fortuity the par-

ties are prevented from being present at the sale to protect their interests. State ex rel. Hartley v. Innes, 137 Mo.App. 420, 118 S.W. 1168; 33 C.J.S. Executions § 232.

Complaint is made that the sale was held at an unusual hour, as a result of which inadequate prices were obtained, resulting in substantial prejudice and loss to the property owners. The evidence established the existence of a custom of at least fifty years' standing to hold judicial sales, including execution sales, at twelve o'clock noon. Relying upon that custom, the movants' representative appeared at the proper place at ten minutes before twelve o'clock, prepared to make a substantial bid on each of the three parcels. The sale having taken place at the nine o'clock call, property shown to have been worth $8,500 was sold at a loss to the property owners of more than $4,000. The property owners were the victims of "surprise" in the legal sense, in that they were unexpectedly placed in a situation against which ordinary prudence would not have guarded. State ex rel. Hartley v. Innes, supra, 137 Mo.App. loc. cit. 426, 118 S.W. loc. cit. 1170. They were misled, without fault on their part, to their substantial prejudice.

■ In the conduct of an execution sale the sheriff is said to be the agent of both the property owners and the judgment creditor, and it is his duty to act in such a manner as to protect the interests of both and to see that the property is not sacrificed. Davis v. McCann, 143 Mo. 172, 44 S.W. 795; Hoevel v. Hoevel, Mo. Sup., 199 S.W. 402; Rogers & Baldwin Hardware Co. v. Cleveland Bldg. Co., 132 Mo. 442, 34 S.W. 57, 31 L.R.A. 335. The deputy's own testimony shows that he failed to exercise that wise and sound discretion required of him in the conduct of an execution sale. He gave as his reason for customarily adjourning sales from nine o'clock to twelve o'clock that there were no "competitive" bids at the nine o'clock call and "to see if more money could be

obtained," for "there are more bidders around" at twelve o'clock. Yet he accepted a bid of only $1 more than the amount of the city's bid ($1 more than the judgment, fees and costs), regarding that as a "competitive" bid and as a "good bid." If the city's bid was not competent, Dady's bid was not competitive. The deputy was not obliged to accept the Dády bid as appellant contends, merely because it exceeded the city's bid. Under the circumstances, and especially in the absence of the property owners, West v. Axtell, 322 Mo. 401, 17 S.W.2d 328, loc. cit. 336, the deputy should have adjourned the sale of the three properties in question to twelve o'clock, along with the other forty-seven items, or returned the execution "no sale for want of bidders." Rogers & Baldwin Hardware Co. v. Cleveland Bldg. Co., supra.

In support of its contention appellant cites Hammond v. Scott, 12 Mo. 8; Coxe v. Halsted, 2 N.J.Eq. 311; McGovern v. Union Mut. Life Ins. Co., 109 Ill. 151; Commercial Bank of Utah v. Madsen, 120 Utah 519, 236 P.2d 343; Gower v. New England Mortg. Sec. Co., 152 Ga. 822, 111 S.E. 422.

In Hammond the sheriff advertised the land to be sold "between the hours of nine and ten o'clock in the forenoon." The party seeking to set the sale aside alleged that the sale was conducted at an hour "much earlier than usual for making such sales," as a consequence of which his agent did not reach the place of sale until after the land was struck down. The court rejected this contention on the ground that the sale was within the hours prescribed by law. The decision has but little bearing upon the present inquiry. The public was notified that the sale would be conducted at a time earlier than usual. There was no evidence that the would-be purchaser had any assurance, either from the sheriff or because of any local custom, that the sale would be conducted at any later time in the day. The notice was a special notice, confined to the first hour of the

sale day, and if the prospective bidder failed to attend to the notice which informed him that the sale would be conducted earlier than usual, he had no one to blame but himself. It was not a general notice, applicable to the entire eight hours of a sale day, as in the instant case. A notice that a sale will be conducted at or during a specific one of the eight hours permitted by statute is good, and a sale conducted during that hour in contravention of a custom cannot be assailed as untimely.

A situation much more nearly parallel to the instant situation is found in American Wine Co. v. Scholer, 13 Mo.App. 345, affirmed 85 Mo. 496, in which the deputy sheriff, upon inquiry, informed the attorney for the defendant in execution that the sale would not take place until twelve o'clock, and that he could rely upon that, and then proceeded to hold the sale at ten o'clock. The Supreme Court affirmed a judgment setting aside the sale on the ground that the execution debtor was misled and his property sacrificed by the assurance given his attorney by the deputy sheriff, upon which the debtor had a right to rely. While the representative of the owners of the property in the instant case had no verbal assurance from the sheriff's office upon which to rely, he did know of, and rely on, the local custom of holding judicial sales at twelve o'clock noon. He had a right to rely upon that custom.

In Holdsworth v. Shannon, 113 Mo. 508, 21 S.W. 85, the sheriff, acting as substitute trustee in the sale of land under a deed of trust, conducted a sale just before eleven o'clock in the morning in the face of a local custom to conduct such sales between one and two o'clock in the afternoon. As in the instant case, the sheriff had never made a sale under a deed of trust or execution as early in the day as the sale in question. The Supreme Court upheld the finding of the trial court that the sale took place at an unusual hour.

In West v. Axtell, supra, the sheriff, acting as substitute trustee in a deed of

trust, conducted three foreclosure sales at the usual and customary hour for the making of judicial or trustee's sales (between one and two o'clock in the afternoon) and thereupon announced "that the three sales just made were all of the sales to be made on that afternoon." Later in the afternoon the sheriff was importuned to conduct a fourth sale, the sale in question. There were but two bidders present and property worth approximately $800 was sold for $280. The Supreme Court annulled the sale on the ground that it was held at an unusual hour; that the trustee failed to use that wise and sound discretion required of him in the exercise of the powers of sale.

The other cases cited by appellant may be distinguished and hence are not persuasive. Under the facts in Coxe the execution defendant could not have been misled. McGovern involved a sale advertised to be conducted at a specific hour, a wholly different situation. In Commercial Bank of Utah no question was raised as to the effect of a custom. In Gower there was a fact question as to whether the sale had commenced before the statutory hour.

 Appellant makes a second point that the sale prices were not inadequate. While they were not so grossly inadequate as to shock the judicial conscience and to be presumptive evidence of fraud so as to warrant the setting aside of the sales on that ground alone, they were inadequate. The recognized test of inadequacy, in the absence of statute, is the price received in comparison with what the property would bring at a fair sheriff's sale. 33 C.J.S. Executions § 233, p. 493. The evidence amply shows that at a fair sale, even though a forced sale, these properties would have brought far in excess of the amounts for which they were struck down. The vacation of the sales is not sought here on the ground of inadequacy alone. In addition to inadequacy of price there are the additional factors of irregularity, surprise, and unfairness. A sale should be set aside where, in addition to inadequacy of price, there are additional factors which have resulted in injury to interested parties. See West v. Axtell, 17 S.W.2d loc. cit. 335, supra, and cases cited. 50 C.J.S. Judicial Sales § 28b; 30A, Am.Jur., Judicial Sales, § 253.

The court out of which the instant execution issued found that the sales were made at an unusual hour, and that to allow them to stand would result "in rank injustice." In good conscience and in the interests of justice it cannot be said that the trial court abused its discretion in not permitting these sales to stand. On the contrary, the trial court wisely exercised a sound judicial discretion in setting aside the sales. As the trial judge suggested in his memorandum, "endless confusion would result" if the sheriff were permitted to cry sales *at any time* between the hours of nine o'clock and five o'clock in the afternoon, in contravention of the local custom to hold execution sales at twelve o'clock noon.

For the reasons given the order and judgment of the trial court sustaining the motions to set aside and overruling plaintiff's motion for new trial should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order and judgment of the trial court sustaining the motions to set aside and overruling plaintiff's motion for new trial are, accordingly, affirmed.

RUDDY, P. J., WOLFE, J., and JOHN K. REGAN, Special Judge, concur.